564 A.2d 276

Arthur BACON

v.

James TUCKER and City of Chester.

Appeal of CITY OF CHESTER, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 5, 1989.
Decided Sept. 21, 1989.

Cynthia A. McNicholas, Rankin, Brennan & Donaldson, Media, for appellant, City of Chester.

Leonard A. Sloane, with him, Mitchell S. Clair, Caine, DiPasqua, Sloane, Raffaele & Nigro, Media, for appellee, Arthur Bacon.

Before DOYLE and SMITH, JJ., and BARBIERI, Senior Judge.

SMITH, Judge.

The City of Chester (City) appeals from the denial of a motion for summary judgment pursuant to an interlocutory order of the Court of Common Pleas of Delaware County dated May 23, 1988 subsequently amended by the trial court by order dated August 12, 1988[1] which permitted the City to file with the Superior Court of Pennsylvania a petition for permission to appeal. The Superior Court granted permission for such appeal on October 4, 1988. The appeal was thereafter transferred to the Commonwealth Court by per curiam order of the Superior Court on December 16, 1988.

The issue before this Court is whether the City or the County of Delaware is the employer of Arthur Bacon (Bacon), a summer employee referred to the City by the County of Delaware Office of Employment and Training (OET), and therefore entitled to immunity from suit pursuant to The Pennsylvania Workmen's Compensation Act (Act).[2]

Bacon was injured on August 29, 1985 after falling from the back of a pickup truck owned by the City and used in its rodent control program where Bacon was employed for the summer. The truck was being driven by James Tucker (Tucker), an employee of the City on rodent control program business. At the time of the accident, Bacon was in the course of his employment with the City pursuant to the Summer Youth Employment and Training Program

1. In its amended order, the trial court noted that the question concerning employer immunity under the Act presented a controlling question of law as to which substantial difference of opinion existed and that an immediate appeal might materially advance the ultimate determination.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

(SYETP), a federal job program under the Job Training Partnership Act[3] administered by OET. As a result of his accident, Bacon filed a negligence action against Tucker and the City seeking damages for personal injuries sustained. Motions for summary judgment were filed by Tucker and the City asserting immunity from suit under the Act. Summary judgment was granted in favor of Tucker only, resulting in the City's appeal.

This Court's scope of review in reviewing a grant or denial of summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *County of Schuylkill v. Maurer*, 113 Pa. Commonwealth Ct. 54, 536 A.2d 479 (1988). For courts to enter summary judgment, the record must demonstrate that no genuine issue of material fact exists after an examination of the record in a light most favorable to the non-moving party. *Jones v. Cheltenham Township*, 117 Pa.Commonwealth Ct. 440, 543 A.2d 1258 (1988).

The question of whether an employer-employee relationship exists is one of law based upon findings of fact. While there is no set formula for determining the existence of an employer-employee relationship, this Court has held that the key element is the right to control the manner in which work is performed. However, each case must be decided on its own facts. *City of Scranton v. Workmen's Compensation Appeal Board (Cimoch)*, 88 Pa.Commonwealth Ct. 64, 488 A.2d 648 (1985).

The City asserts that the determination of which governmental body is the employer for purposes of the Act should be governed by a Superior Court case which held that the "borrowed servant" doctrine, i.e., the entity that has actual control or the right to control the work to be done and the manner of its performance, determines the existence of an employer-employee relationship. *Keller v. Old Lycoming Township*, 286 Pa.Superior Ct. 339, 428 A.2d 1358 (1981).[4]

3. 29 U.S.C. §§ 1501–1781 (1985 & Supp.1989).

4. Since the Superior Court's decision in *Keller,* Section 762(a)(7) of the Judicial Code, 42 Pa.C.S. § 762(a)(7) has been amended. As a

In *Keller*, the administrative entity referred CETA participants to employers who determined whether or not they would hire the referred individual. The Court there held that workers in the CETA program were employees of their work site placement or the hiring entity rather than employees of the administrative entity involved. *Keller*, 286 Pa. Superior Ct. at 344, 347, 350–351, 428 A.2d at 1361–1362, 1364. In the matter before this Court, the City, specifically Bacon's supervisors in the rodent control program, trained Bacon to do the work required of him. The City exercised control over Bacon with regard to the work to be done as well as the manner of performing it. Keiter Exhibit 1, p. 3; Keiter Exhibit 2, p. 2; Deposition of Arthur Bacon N.T., pp. 15–16. OET did not supervise the work to be done by Bacon. These facts, the City argues, dictate that the City is Bacon's employer for purposes of the Act.

This Court has previously held that the "prime sponsor" test governs the determination of employer status for purposes of the Act. That is, an agency which receives and administers federally provided funds for employees' wages and payment of workmen's compensation insurance premiums is the employer for purposes of the Act. *Pennsylvania Manufacturers' Association Insurance Co. v. Workmen's Compensation Appeal Board*, 52 Pa.Commonwealth Ct. 588, 418 A.2d 780 (1980). (Federal government provided the county with funds to pay worker's compensation coverage for persons employed under the CETA program. Therefore, the county was claimant's employer at the time

result of this 1982 amendment, exclusive appellate jurisdiction with regard to any tort action brought against a local agency is now vested in the Commonwealth Court. The legislative purpose is to insure uniform application and interpretation of the provisions of the Political Subdivision Tort Claims Act, Act of November 26, 1978, P.L. 1399, *formerly*, 53 P.S. §§ 5311.101–5311.803, repealed by the Act of October 5, 1980, P.L. 693. The tort claims act was substantially reenacted by the General Assembly in governmental immunity provisions set forth as Subchapter C of Chapter 85 of the Judicial Code, 42 Pa.C.S. §§ 8541–8564. *Brady Contracting Company v. West Manchester Township Sewer Authority*, 338 Pa.Superior Ct. 144, 487 A.2d 894 (1985) (Superior Court transferred jurisdiction to Commonwealth Court), 97 Pa.Commonwealth Ct. 31, 508 A.2d 1287 (1986), *appeal denied*, 514 Pa. 649, 524 A.2d 495 (1987).

of his injury, although the community progress council had charge of training and supervision of claimant and of any disciplinary and firing responsibilities.) *See also County of Armstrong v. Workmen's Compensation Appeal Board (Ross)*, 81 Pa.Commonwealth Ct. 474, 473 A.2d 755 (1984) (in determining whether employee hired under CETA was working for the county or the borough when he suffered a work-related injury, the county which administered the CETA program and retained financial control of the employee was the employer responsible for paying benefits rather than the borough which supervised and directed the employees' daily work). Here, OET was responsible for pay, for social security and for worker's compensation premiums for participants in the SYETP program. Keiter Exhibit 1, p. 2; Deposition of Kathryn Keiter, p. 24. OET is therefore the prime sponsor of the program employing Bacon. These facts, Bacon argues, dictate that OET is his employer for purposes of the Act.

Both *Pennsylvania Manufacturers' Association* and *Armstrong* relied upon the holding in *Frederico Granero Co. v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 308, 402 A.2d 312 (1979) to support the decisions reached. In *Frederico*, petitioner filed a fatal claim petition for death benefits as a result of her husband's death while performing carpentry work. Workmen's compensation benefits were awarded by the Board to petitioner. On appeal to this Court, Frederico Granero Company contended that the decedent was not an employee of the Company. The record established that the Company would call decedent on the telephone at least twice a week and give instructions as to where he should go to pick up supplies, what jobs were to be performed and where they were to be performed. It was determined that Frederico and the decedent had an employer-employee relationship. The Court held that "the most important factor in determining the existence of an employer-employee relationship is evidence of actual control or of the right to control the work to be done and the manner of its performance." *Id.*, 43

Pa.Commonwealth Ct. at 311, 402 A.2d at 314. This Court concludes that disposition of the present matter is best governed by its holding in *Frederico.* "Control" of the work to be performed by Bacon does therefore determine the existence of an employer-employee relationship between the City and Bacon. Control of funding under the circumstances here does not dictate such a result.

The City argues that another factor in determining whether an employer-employee relationship exists is whether there is a necessity to instruct and train an employee in how to perform the duties required by the job as opposed to the "borrowing" of an employee already possessing a skill or special training required for an assignment. In *Accountemps v. Workmen's Compensation Appeal Board (Myers),* 120 Pa.Commonwealth Ct. 489, 548 A.2d 703 (1988), a skilled accountant provided on a temporary assignment to a business by Accountemps, the referral agency, was injured after arrival at the temporary assignment resulting in the filing of a petition for workmen's compensation benefits against both the business to which the temporary employee was loaned and Accountemps. The referee found that Accountemps was the claimant's employer and liable for workmen's compensation benefits. This Court however found that *Keller* was not controlling because the entity in control of the work site instructed and trained the employees in how to perform the duties required by the job, whereas the Accountemps' claimant was already in possession of a skill or special training required for the temporary assignment and did not require training or instruction in how to perform the basic job. While the claimant in *Accountemps* was skilled, the claimants in *Keller* as well as the instant action were not. This factor the City argues should distinguish *Accountemps,* thus making it inapplicable here. This Court agrees.

Bacon was a youth who was given the opportunity through the SYETP program to develop basic work skills. He was not a borrowed employee already in possession of a skill or special training, but was instead trained by his

supervisors at the City to do the work required of him in the rodent control program. Examination of the record therefore demonstrates that no genuine issue of material fact exists in the matter *sub judice* as to actual control or the right to control Bacon's work and the manner of performance. This Court must accordingly conclude that the City is Bacon's employer for purposes of the Act and thus entitled to immunity from suit.

## ORDER

AND NOW, this 21st day of September, 1989, the order of the Court of Common Pleas of Delaware County is reversed, and this action is remanded to the trial court with instructions to enter summary judgment in favor of Appellant City of Chester consistent with the opinion of this Court.

Jurisdiction relinquished.