618 A.2d 1219

**Phyllis G. WETZEL, Individually and as Administratrix of the Estate of Kevin Scott Wetzel, Deceased,**

v.

**CITY OF ALTOONA, Altoona Area School District, Southern Alleghenies Planning & Development Commission, Deere & Company, and Wineland Equipment, Inc.**

**Appeal of DEERE & COMPANY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 8, 1992.

Decided Dec. 22, 1992.

---

310

David Helwig, for appellant.

J. Michael Dorezas, for appellees.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, PELLEGRINI, FRIEDMAN and KELLEY, Judges.

FRIEDMAN, Judge.

Deere & Company (Deere) appeals from the August 26, 1991 order of the Court of Common Pleas of Blair County, granting the City of Altoona's (City) motion for summary judgment and dismissing the City as a defendant in a negligence action. The issue before this court is whether the City was the employer of Kevin Wetzel (decedent), a summer laborer, and so entitled to immunity from civil liability pursuant to The Pennsylvania Workmen's Compensation Act (Act).[1] We affirm.

The facts may be summarized as follows. Decedent was a participant in the Summer Youth Employment Program (SYEP), a program funded by the Federal Comprehensive Employee Training Act (CETA) and run under the auspices of the Southern Alleghenies Planning and Development Commission (Southern Alleghenies). The Altoona Area School District (District) served as program administrator for Blair County. SYEP referred decedent to a City highway crew directed by a City employee.

A worksite agreement between the District and the City identified the City as the employing agency (R.R. at 208a). According to the agreement, the employing agency agreed to provide (1) proper and adequate supervision of the participant, (2) jobs appropriate for youth, with instruction in the relevant tasks and (3) a safe and healthy work environment.[2]

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

2. Decedent's job description states, in pertinent part:
   *GENERAL DEFINITION*
   This is routine manual work usually of repetitive nature.
   An employee in this class is responsible for performing duties primarily requiring physical exertion. Work involves the use of manual tools on routine tasks and occasionally the use of smaller power operated tools for a limited time. The duties of employees in this class range over a wide variety of municipal activities, includes [sic] light and heavy physical labor, indoor and outdoor work, and work in groups or alone depending on the location and nature of the assignment. The *employees receive assignments orally and in detail and* work is performed under the supervision of a foreman or assistant foreman.
   (R.R. at 207a.)

In September 1983, decedent was killed in the course of employment when a City employee backed into him with a piece of earth moving equipment. Decedent, through his administratrix, originally filed suit for negligence against the City, the District, Southern Alleghenies, the Wineland Equipment Company and Deere, manufacturer of the earth moving equipment. All defendants filed motions for summary judgment.

An employer's liability under the Workmen's Compensation Act is exclusive. Section 303(a) of the Act, 77 P.S. § 481(a).[3] Therefore, both the City and the District sought immunity from tort liability by claiming to be decedent's employer at the time of the accident. On this basis, the trial court granted summary judgment in favor of the City and dismissed it from the negligence action.[4] In its opinion, the trial court concluded that (1) the City was the entity in control of the work site; (2) the City was responsible for providing instruction to decedent; and (3) the City was decedent's employer (Trial Court Opinion at 10). Deere now appeals.[5]

3. This section governs exclusiveness of remedy, providing:
   (a) The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.
   Once the identity of the employer is ascertained, that party is automatically entitled to the defense contained in this provision.

4. The trial court also granted the District's motion for summary judgment, based on immunity conferred by 42 Pa.C.S. § 8541, known as the Political Subdivision Tort Claims Act, and denied the motions for summary judgment filed by all other defendants.

5. Our scope of review on appeal from a grant of summary judgment is limited to a determination of whether the trial court committed an error of law or abused its discretion. *Bacon v. Tucker*, 128 Pa.Commonwealth Ct. 575, 564 A.2d 276 (1989). Summary judgment is a question of law based upon findings of fact. As stated in the trial court opinion:
   It is fundamental in the law of this Commonwealth that summary judgment will be granted only in such cases in which no genuine issue of material fact exists, so that a trial would serve no purpose. *Goodrich–Amram 2d*, Section 1035:1. In any instance of a request for entry of summary judgment the court must view all of the

On appeal, Deere argues that the trial court erred as a matter of law in determining that the City, as decedent's employer, was immune from suit under the Act. According to Deere, decedent was more than a mere laborer; his work focused on learning how to "get a job, keep a job and plan for a career" (Appellant's brief at 5). Deere contends that because the District, rather than the City, controlled program administration (including the monitoring of attendance, punctuality, appearance and attitude, all skills connected with getting and keeping a job), the District was decedent's employer. We disagree.

The existence of an employer/employee relationship is a question of law based upon findings of fact. *Bacon v. Tucker,* 128 Pa.Commonwealth Ct. 575, 564 A.2d 276 (1989). Although there is no standard approach or formula for the determination of this relationship, we have held that "the most important factor in determining the existence of an employer/employee relationship is evidence of actual control or of the right to control the work to be done and the manner of its performance." *Frederico Granero Company v. Workmen's Compensation Appeal Board,* 43 Pa.Commonwealth Ct. 308, 311, 402 A.2d 312, 314 (1979).

In *Granero,* Mrs. Mullen, a carpenter's widow, filed for and was awarded death benefits as a result of her husband's death in the course of his employment. The employer appealed, contending that Mr. Mullen was not a company employee. However, a review of the record indicated that the company called Mullen on the telephone several times per week and gave him instructions regarding job assignments, location and supplies. We affirmed the award of benefits in *Granero,* concluding: "It would seem that Frederico Granero exercised actual control over the work performed by Mullen and surely

evidence in the light most favorable to the non-moving party. *Ritmanich v. Journal Enterprise, Inc.,* 219 Pa.Super. 198, 280 A.2d 570 (1971). Summary judgment may be granted only if the case is clear and free from doubt. *Prince v. Pavoni,* 225 Pa.Super. 286, 302 A.2d 482 [452] (1973).
(Trial Court Opinion at 3.)

had the right to control such work." *Id.* at 312, 402 A.2d at 314.

■ Deere counters, arguing that this case is controlled by our decision in *Pennsylvania Manufacturers Association Insurance Co. v. Workmen's Compensation Appeal Board*, 52 Pa.Commonwealth Ct. 588, 418 A.2d 780 (1979).[6] In *Pennsylvania Manufacturers*, a CETA employee, assigned by the county of York to a project operated by the Community Progress Council (Council), was injured on the job. We determined that the county, rather than the Council, had employed the injured worker, reasoning that the federal government provided funds to the county to pay for workmen's compensation coverage for persons injured under the CETA

6. The City relied on *Granero* and *Bacon*, and their "control" test, to support its contention that it was decedent's employer. In addition, the City cited *Keller v. Old Lycoming Township*, 286 Pa.Superior Ct. 339, 428 A.2d 1358 (1981) and *English v. Lehigh County Authority*, 286 Pa.Superior Ct. 312, 428 A.2d 1343 (1981), two Superior Court cases consistent with *Granero*. In both *Keller* and *English*, the court held that operational control of the work site determines who is the employer under the Act. The *Keller* court reasoned as follows:

> If one bears in mind that the evil the legislature was addressing by the Workmen's Compensation Act was uncompensated work related injuries, it is apparent that the employer under the act is the employer who controls the operations at the work site. It is this employer who can, by the exercise of his power over the operations at the work site, reduce the risk of accidents; ... and it is the product produced at the work site that will "bear the blood" of the injured workman and should therefore reflect the cost of that injury.

286 Pa.Superior Ct. at 350, 428 A.2d at 1363–64.

Deere argues that the trial court erred by deciding this case on Superior Court precedent in conflict with Commonwealth Court opinions and asserts that we must follow our own decision in *Pennsylvania Manufacturers*. We agree with Deere that where there is a divergence of opinion between Commonwealth Court and Superior Court in workmen's compensation matters, we must follow our own precedent. As we have stated:

> We are bound by stare decisis to follow the opinions of our own court until they are either overruled by the Supreme Court, or compelling reasons persuade otherwise.

*County of Armstrong v. Workmen's Compensation Appeal Board*, 81 Pa.Commonwealth Ct. 474, 478, 473 A.2d 755, 757 (1984).

However, that is not the case here. Neither of the Superior Court cases referenced conflict with the Commonwealth Court position on this matter, set forth in *Granero*. In fact, any perceived conflict has since been resolved by our decision in *Bacon*.

program. Because, under its contract with the Council, the county only transferred funds to the Council for administrative costs and retained control of amounts earmarked for wages and payment of worker's compensation insurance premiums, the county remained employer at the time of injury; i.e., control over funding determined the identity of the employer.

More recently in *Bacon,* we limited the application of *Pennsylvania Manufacturers* and reaffirmed that the key element in determining the existence of an employer/employee relationship is control of the work to be performed. In *Bacon,* a participant in a summer youth employment program administered by Delaware County was assigned to work as a truck driver's helper for the city of Chester. The employee was injured on the job and filed a negligence action against the truck driver and Chester. Both defendants filed motions for summary judgment, but the trial court granted summary judgment only to the driver. On appeal, we held that because Chester was the injured worker's employer, it was immune from suit under the Act.

Our reasoning in *Bacon* is particularly relevant here. We conceded that we previously had relied upon the "prime sponsor" test of *Pennsylvania Manufacturers* to govern the determination of employer status for purposes of the Act. Under this test, an employer is identified as the agency which receives and administers federally provided funds for employee's wages and payment of workmen's compensation insurance premiums. Although Delaware County occupied this role in *Bacon,* we nevertheless held that this fact was not dispositive. Instead, noting that *Pennsylvania Manufacturers* also relied upon *Granero* to support its decision, we determined that the case was best governed by our holding in *Granero.* Applying that holding, we concluded that as the agency with actual control over the employee, Chester was the employer.

Here too, as in *Bacon,* it is control of the work to be performed, and not control over funding, which best determines the existence of the employer/employee relationship. Our examination of the record here reveals that the City

assigned, supervised and controlled the work performed by decedent. Moreover, the employment agreement between the City and the District clearly indicates that the City was the employing agency with full control and responsibility for the work site. The trial court correctly found that the City determined the hours and location of the work. Similarly, the City established rules governing the use of hardhats and vests and safety requirements around the construction equipment. In sum, the facts confirm that the City had actual control over decedent's work and the manner of its performance. *Granero*.[7]

Given this record evidence, we can envision no genuine issue of material fact with regard to the City's actual control over decedent's work. Therefore, the trial court correctly found that the City was decedent's employer, and so is entitled to immunity under the Act.

Accordingly, we affirm.

## ORDER

AND NOW, this 22nd day of December, 1992, the order of the Court of Common Pleas of Blair County, dated August 26, 1991, is affirmed.

7. The following testimony is particularly relevant:

Randy Long, decedent's CETA counselor, testified that the City highway foreman assigned work to decedent's crew and had exclusive control over performance.

Q   Randy, did you at any time play any role or instruct Kevin Wetzel how to perform any of his duties that he was assigned by the City?
A   I did not.
Q   Whose responsibility was that?
A   The Supervisors were responsible to show them how to work, et cetera. I was mainly there to counsel and to counsel alone. I was there to inform him what a good job is to be done, but as far as operating a backhoe, and you know, equipment—
Q   Or a shovel?
A   Or a shovel, no.

(R.R. at 112a.)

In addition, Ralph Davis, City highway foreman, testified that he instructed decedent on safety and job performance. Davis also stated that he assigned decedent to the work site each day. Finally, Charmayne Raia, SYEP counselor and program head, testified that she directed decedent on how to fill out paperwork, but was not the "boss." (R.R. at 132a.)