645 A.2d 957

**James CRENSHAW, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HUSSEY COPPER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 25, 1994.

Decided July 12, 1994.

8. Our resolution of this issue makes unnecessary our consideration of DPW's remaining issues.

Sara J. Klein for petitioner.

Debora M. Lelik for respondent.

Before SMITH and FRIEDMAN, JJ., and NARICK, Senior Judge.

FRIEDMAN, Judge.

James Crenshaw (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming a

referee's dismissal of Claimant's claim petition. We vacate and remand.[1]

Claimant was employed as a material handler with Hussey Copper, Ltd. (Employer), a rolling copper mill, for twenty-nine (29) years.[2] His last day of work was August 27, 1989. In November 1990, Claimant filed a claim petition, alleging that he had suffered a low back injury as a result of repetitive activities at work. Employer filed a timely answer denying Claimant's allegations and hearings were held before a referee.

At the hearings, Claimant testified on his own behalf and, in addition, presented the deposition testimony of Alan D. Hoover, M.D., Jeffrey A. Baum, M.D., and Joel M. Alcoff, M.D. During the first hearing, Claimant described the strenuous nature of his job duties at length. (R.R. at 7a–30a.)[3] Claimant testified that about seven or eight days prior to his leaving work, he started having back and leg pain, (R.R. at 13a, 30a–31a), and although he tried to continue to work, by August 27,

1. This case was assigned to the opinion writer on June 7, 1994.

2. In 1984, Hussey Copper Range was sold to Hussey Copper, Ltd. Claimant worked for both of these employers at the same mill site.

3. Claimant's attorney created a summarized description, drawn from Claimant's testimony given at the first hearing, which she presented in the form of hypothetical questions to the medical experts. According to Claimant, his work with Employer consisted of the tasks needed to "make a charge" for the F–1 Furnace. Every day that he worked at the mill he transported materials weighing about 350,000 pounds using a 10,000 pound fork-lift truck. He had to get in and out of the truck frequently, 25 to 30 times a day, and had to turn and twist his body to see where he was dumping materials and driving. He had to maintain his truck, which involved carrying a propane tank weighing between 50 and 70 pounds for up to half a block. With the fork-lift, he carried boxes of metal weighing 600 to 2,000 pounds and, although the fork-lift would tilt the boxes, Claimant often had to tilt or push the box with his body or arms in order to have the material land where it was intended. He then had to sweep up "scalpings" that fell from the boxes he carried with the fork-lift and shovel them into a box so he could drive on the area with his truck. He also had to rake clumps of metal in order to level them off in the boxes. Sometimes he had to shake and beat the heavy drums of metal in order to start the dumping process and sometimes he dumped the boxes by hand, pushing the boxes over or reaching into the drums to pull the metal out. Claimant performed these tasks rapidly and repeatedly for 29 years. (R.R. at 109a–111a, 204a–205a, 237a–239a.)

1989, the pain had become too severe. He called off sick from work the following day and has not worked since that time.

On August 29, 1989, Claimant went to see Dr. Hoover, his family physician. Dr. Hoover testified that Claimant came to him complaining of right leg pain and numbness, as well as weakness of his right leg and difficulty in ambulation; Claimant told him the acute pain had begun two days earlier. (R.R. at 198a.) Because Claimant was diabetic, Dr. Hoover initially thought the leg pains might be due to diabetic mononeuropathy, but after ordering and receiving the result of an Magnetic Resonance Imaging (MRI) study of Claimant, Dr. Hoover ruled out diabetic mononeuropathy as the cause of the pains in his right leg and instead diagnosed radiculopathy caused by herniation of the lumbar disc as well as degenerative disc disease. (R.R. at 200a–202a, 214a, 220a–221a.) When Claimant's attorney presented Dr. Hoover with a hypothetical question summarizing Claimant's work responsibilities, Dr. Hoover opined within a reasonable degree of medical certainty that his patient's herniation and disc disease were work-related. (R.R. at 209a, 214a.)

Dr. Baum, a board-certified orthopedic surgeon, testified that he met Claimant through a referral by Dr. Hoover and first examined Claimant on September 5, 1989. After reviewing the MRI results, Dr. Baum ordered a myelogram which confirmed that Claimant had a herniated disc between the L4 and L5 vertebrae. Dr. Baum's complete diagnosis included a right L4–5 disc herniation, with a free fragment, with a significant motor weakness due to the pressure on the 5th nerve root, with degenerative disc disease between the 4th and 5th lumbar and 1st sacral vertebrae. (R.R. at 109a.) Dr. Baum determined that Claimant required back surgery and on October 3, 1989, performed a right L4–5 hemilaminectomy with a disc excision in the L5 root decompression. (R.R. at 107a.) As with Dr. Hoover, Claimant's counsel presented Dr. Baum with a summary of Claimant's job description, to which Employer's attorney did not object. After hearing the hypothetical question describing Claimant's work duties, Dr. Baum concluded within a reasonable degree of medical certainty that

repetitive trauma to the low back from these work activities caused Claimant's degenerative lumbar disc disease. (R.R. at 111a–113a, 128a, 132a–133a.)

On cross-examination, Dr. Baum acknowledged that he had filled out Claimant's insurance form to Employer and had marked "no" next to the question asking whether Claimant's condition or injury was due to his employment. (R.R. at 125a.) However, in explanation, Dr. Baum stated that he was unaware of Claimant's job duties until Claimant's attorney summarized them at the deposition. Dr. Baum explained that he initially indicated that Claimant's condition or injury was not work-related because, at the time, Claimant himself did not know the source of his pain and never described his job at the mill to Dr. Baum.

Dr. Joel Alcoff, who has been treating Claimant since August 1990, also concluded within a reasonable degree of medical certainty that Claimant's strenuous job caused Claimant's degenerative disc disease. (R.R. at 240a, 243a.) Again, Claimant's attorney read the job description summary drawn from Claimant's testimony at the first hearing, after which Dr. Alcoff provided the following testimony:

Q. Doctor, I am going to ask you now your opinion was [sic] to the causation of Mr. Crenshaw's chronic lumbosacral strain, sciatica, and degenerative disc disease, within a reasonable degree of medical certainty?

A. Given the job description this man had for 29 years, almost 30, and repetitive manual labor that he underwent, I can say, within a reasonable degree of medical certainty and a reasonable degree of common sense, if you took your, quote, average person out on the street and put them through a job description that he had for that period of time, your average person out on the street would have a degenerative spine, spine disease, if they had no other causal factors.

Q. Are you aware of any other causal factors that Mr. Crenshaw would have sustained—incurred?

A. Nothing that I know of. I asked him about hobbies, about physical sports, about lifting other than the job. He had a real strenuous job for very many years.

Q. Can you explain how a strenuous job can cause degenerative disc disease?

A. Let us take his job description, for instance. This man had to turn and twist constantly all day long. See, I worked in the steel mills also, in the rolling factory, too. I was strictly a laborer, but I saw the guys that did the work like Mr. Crenshaw, and they had to peer out from over the sides of their crane to see where they're putting the stuff to make sure it was going down right, then you had to push the stuff over, and anything that spilled he had to shovel. . . . I am taking Mr. Crenshaw's job, and if you look at his job description and you convert that into what his back was doing in terms of bending and twisting and the stressing imposed on the intervertebral discs, you are going to have some wear and tear there.

(R.R. at 240a–242a.)

Unlike Claimant, Employer offered no medical evidence in support of its position,[4] but did present the deposition testimony of three lay witnesses: Karen Urwin, Cornelius T. McCullough and Robert L. Peterson, all of whom work for Employer.

Karen Urwin, Personnel Assistant and Nurse, and Robert Peterson, Vice President of Industrial Relations, both testified on the issue of timely notification. Urwin testified that at the time Claimant left work, she knew only that Claimant had called in sick. She stated that Claimant did not specifically mention a work-related injury when she first spoke with him,

---

4. At the request of Employer, Claimant was examined by Bruce J. Wilder, M.D. Dr. Wilder submitted a medical report stating that Claimant suffered extensive lumbar spine and disc disease, but he gave no opinion as to the cause of the disease pending further information about the physical demands of Claimant's employment. (R.R. at 271a–273a.) This medical report from Dr. Wilder was never offered in evidence by Employer; instead it was admitted as an exhibit for Claimant.

but only informed her later, when he was already receiving disability. (R.R. at 279a, 288a, 292a–295a, 298a, 314a.)[5] Peterson testified that Claimant did not mention a work-related injury to him. (R.R. at 356a–357a, 362a–363a.)

Cornelius McCullough, Claimant's Supervisor, also asserted that Claimant had never told him about any type of work-related injury or problem. (R.R. at 327a–329a.) In addition, McCullough testified concerning Claimant's daily tasks, acknowledging that certain of these duties would be done manually but stating that a material handler used a tow motor or crane to move and dump any heavy materials. (R.R. at 321a–345a.)[6]

The referee dismissed Claimant's petition based on the following findings and conclusions:

5.  However, Urwin also admitted that on Claimant's disability insurance form, which she received and signed on October 11, 1989, Claimant indicated that his injury was work-related and that he had or would file for worker's compensation benefits. (R.R. at 292a, 294a.) In fact, on appeal, the Board determined that the referee erred in finding that Employer did not receive timely and proper notice of Claimant's alleged injury. Based on this testimony of Urwin and the form itself, the Board concluded that Employer received notice well within the 120–day period from the date of injury provided under Section 311 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

6.  When asked about McCullough's testimony, Claimant disagreed and stated that, depending on the work to be performed, it was not always possible to use a crane, and that he used it only once in a while. (R.R. at 67a–72a.) We note, however, that McCullough's description of Claimant's job duties, which was accepted by the referee, agrees in large part with that given by Claimant. Although McCullough contends that Claimant's heaviest labor was performed with a tow motor or crane, McCullough did testify that Claimant had to carry a 40–50 pound propane tank approximately once a day, (R.R. at 326a–327a), that Claimant had to sweep up the "scalpings" left on the ground and shovel them into a box, (R.R. at 327a), that Claimant had to empty containers with a rake, (R.R. at 323a), that eight to ten times a day, Claimant had to use the rake to level the boxes by moving clumps of metal weighing 15–20 pounds each, (R.R. at 329a–331a), that Claimant climbed on and off his fork-lift 25–30 times per day, (R.R. at 333a), that Claimant sometimes had to shake the drums by hand to remove the contents because the oily metal would stick, (R.R. at 335a, 339a), and that Claimant sometimes had to reach into the drums and pull metal out by hand, (R.R. at 336a).

## FINDINGS OF FACT

1. The present claim petition was filed on November 6, 1990, by James Crenshaw (claimant) for an alleged injury on August 27, 1989. A timely and responsive answer thereto was filed by Hussey Copper, Ltd. (employer).

2. At the time of the alleged injury, claimant was employed as a material handler at an average weekly wage of $523.77.

3. His last day of work was August 27, 1989.

4. There was no specific incident that occurred at work on or before August 27, 1989, that may have caused the alleged injury.

5. Claimant first saw Dr. Baum on September 5, 1989. On October 5, 1989, Dr. Baum indicated in Claimant's Exhibit "1" (attending physician's statement on second page) that claimant's condition was not work-related.

6. In fact, Dr. Baum acknowledged that the claimant told him his condition was not work-related (Claimant's Exhibit "2", p. 26).

7. Timely and proper notice of claimant's alleged injury was not given to employer.

8. The deposition-testimonies taken on employer's behalf (Defendant's Exhibits "A", "B", and "C") are credible and relied upon.

9. The first notice employer had of claimant's alleged injury was when the present petition was assigned by the Bureau on November 23, 1990.

10. Assuming, arguendo, that claimant did not know on August 27, 1989, whether or not there was a possible connection between his alleged injury and his employment, he should have known by no later than September 5, 1989, by the exercise of reasonable diligence of the possible relationship of his alleged injury to his employment. Subsequent to August 27, 1989, the first doctor he saw was Dr. Hoover on August 29, 1989. Dr. Hoover ordered a MRI of claimant's lumbar spine which was done on August 30, 1989. From that test, Dr. Hoover formed an opinion as to the cause of his symptoms and findings on his August 29, 1989

exam and referred him to Dr. Baum who performed surgery on October 3, 1989, for the L4–5 ruptured disk [sic].

11. Claimant did not sustain his burden of proof.

12. Except as indicated above, all of claimant's testimony and other evidence is not credible and is given no probative value.

13. Claimant did not sustain any work-related injury on or before August 27, 1989, for the purposes of this proceeding.

14. His employment or duties at work were not a material, contributing factor in his alleged injury and/or disability.

15. The last exhibit for both parties was various objections preserved for ruling. The rulings were made right on those exhibits.

## CONCLUSIONS OF LAW

1. Claimant did not sustain any injury in the course of his employment.

2. His claim is barred by Sections 311, 312, and 313 of the Act.

(Referee's Findings of Fact, Nos. 1–15, Referee's Conclusions of Law, Nos. 1–2; Petitioner's brief at 21–22.)[7]

Claimant appealed to the Board which concluded that the referee erred in finding that Claimant failed to give timely and proper notice of his injury to Employer.[8] However, the Board upheld the referee's conclusion that Claimant had failed to meet his burden in establishing that he sustained a work-related injury. Therefore, the Board affirmed the referee and dismissed Claimant's appeal.

On appeal to this court, Claimant argues that because the referee capriciously disregarded competent evidence that Claimant's disability resulted from his 29 years of employment

7. We note that Findings of Fact, Nos. 13 and 14, dealing with causation, are actually legal conclusions and should have been included in the referee's Conclusions of Law.

8. Employer does not appeal from the Board's decision that notice was timely and proper.

with Employer, the Board erred in affirming the referee's determination that Claimant suffered no work-related injury.

Initially, we must determine our standard of review in this case. These standards are clear-cut.

> Where the party with the burden of proof is the *only* party to present evidence and yet loses before the factfinder, the appropriate standard of review is the "capricious disregard" test. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). A capricious disregard of evidence will be found when there is a willful and deliberate *disregard* of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result. [Footnote omitted.] (Emphasis in original.)

> However, when both parties present evidence before the factfinder, *however limited,* our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law committed, or whether any necessary finding of fact is unsupported by substantial evidence. *Lautek Corp. v. Unemployment Compensation Board of Review,* 138 Pa.Commonwealth Ct. 547, 588 A.2d 1007 (1991). Substantial evidence is that quantum of relevant evidence which a reasonable mind would deem adequate to support a conclusion. *Czap v. Workmen's Compensation Appeal Board (Gunton Corp.),* 137 Pa.Commonwealth Ct. 612, 587 A.2d 49 (1991), appeal denied, 527 Pa. 654, 593 A.2d 425 (1991).... *[T]here is no requirement that this "evidence" include medical testimony.* (Emphasis added.)

*Iacono v. Worker's Compensation Appeal Board (Chester Housing Authority),* 155 Pa.Commonwealth Ct. 234, 240, 624 A.2d 814, 816–817 (1993), *aff'd per curiam,* 536 Pa. 535, 640 A.2d 408 (1994).

Claimant contends that we should review this case under the capricious disregard standard. Claimant points out that he could not rely on non-expert testimony to meet his burden of proof but was required to provide unequivocal

medical evidence to establish the causal connection between his employment and his injury.[9] Although aware that Employer presented evidence before the referee, Claimant observes that he was the only party to provide competent, i.e. medical, evidence on causation, the only issue remaining for review in this case. Claimant argues that because Employer failed to present competent evidence on this issue, the court has no evidence to review to determine if the referee's finding of non-work-relatedness has substantial support in the record. Therefore, Claimant concludes that the court cannot review the referee's findings under the substantial evidence standard but can only determine if the referee capriciously disregarded competent evidence submitted by Claimant. We cannot agree that the capricious disregard standard applies here.

Although Employer offered no medical evidence before the referee, it did submit three deposition transcripts into evidence in support of its case. As previously stated, in determining the scope of appellate review, there is no requirement that evidence presented include medical testimony; rather, when both parties present evidence before the factfinder, however limited, we must apply the substantial evidence standard when reviewing the referee's findings. *Lautek.* Thus, using the substantial evidence test, we examine the record to determine whether it supports the referee's conclusion that Claimant's injury is not work-related. "When substantiality of the evidence is at issue *we must examine the entire record* to determine if there is evidence which a rational person could accept to support the referee's findings." *Galbreath v. Workmen's Compensation Appeal Board (Gordon),* 156 Pa.Commonwealth Ct. 378, 627 A.2d 287 (1993) (emphasis added), *citing, Bethenergy Mines, Inc. v. Workmen's Compensation*

---

**9.** It is well established that where there is no obvious causal connection between an employee's disability and his employment, such as is the case here where the injury resulted from the cumulative effect of recurring, significant, miniature impacts or traumas, the causal connection must be established by unequivocal medical testimony. *Burke–Parsons Bowlby Corp. v. Workmen's Compensation Appeal Board (Frederick),* 80 Pa.Commonwealth Ct. 129, 471 A.2d 143 (1984); *Haney v. Workmen's Compensation Appeal Board,* 65 Pa.Commonwealth Ct. 461, 442 A.2d 1223 (1982).

*Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *aff'd*, 531 Pa. 287, 612 A.2d 434 (1992).

In performing our review, we focus particularly on referee's Findings of Fact Nos. 5 and 6 because these are the only factual findings which relate to whether Claimant's injuries were caused by his employment. In essence, Finding of Fact No. 5 implies that one of Claimant's doctor's, Dr. Baum, determined that Claimant's condition was not work-related. Finding of Fact No. 6, referring to page 26 of Dr. Baum's testimony, explicitly states that Claimant told Dr. Baum that his condition was not work-related. Having examined the entire record here, we must conclude that these findings are not supported by that record.[10]

10. Throughout his deposition, Dr. Baum repeatedly and unequivocally states that in his medical opinion Claimant's degenerative lumbar disc disease was caused by his repetitive work activities. (R.R. at 111a–113a, 121a–122a, 128a, 132a–133a.) Dr. Baum explained that he checked off the box on the insurance form which stated that Claimant's condition was not work-related because, at the time, he was unaware of Claimant's job duties and Claimant, at that time, did not know if his injury was job related. (R.R. at 125a.) Dr. Baum testified that he had not inquired about Claimant's job duties at the mill while he was treating Claimant, and only became aware of them at the time of the deposition. (114a–115a, 122a). Moreover, contrary to the referee's finding, Dr. Baum does not state on page 26 of his deposition that Claimant acknowledged that his condition was not work-related. Rather, when asked why he indicated that the injury was not work-related, Dr. Baum stated, "Well, that is what he told me. I mean he did not know whether or not he had hurt himself at work or not." (R.R. at 125a.)

Our Supreme Court has held that the medical witnesses' *entire testimony* must be reviewed and taken as a whole and a final decision should not rest upon a few words taken out of context of the entire testimony. *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works)*, 515 Pa. 315, 528 A.2d 580 (1987); *Sheetz v. Workmen's Compensation Appeal Board (Firestone Tire & Rubber Co.)*, 104 Pa.Commonwealth Ct. 411, 522 A.2d 146 (1987) *appeal denied*, 530 Pa. 667, 610 A.2d 46 (1992). "At the very least, the findings and conclusions of the fact-finder must have a rational basis in the evidence of record...." *Farquhar*, 515 Pa. at 324, 528 A.2d at 584–585 (emphasis deleted). Here, however, the referee's findings, are based on an analysis in which words are taken out of context, explanations are ignored, and the entire import of the testimony is disregarded and misconstrued. Moreover, there is no medical testimony or other competent evidence in the record attributing the disability for which claim is made to any source other than Claimant's 29 year work experience with Employer.

Ordinarily, where the findings which form the basis for the referee's conclusion are not supported by substantial evidence, we would reverse the referee. However, applying the substantial evidence test, we must now determine whether Claimant can sustain his burden of proof when the referee finds that none of Claimant's relevant evidence is credible. Generally, we are compelled to conclude that Claimant cannot satisfy his burden under such circumstances.

■ In workers' compensation cases, it is the referee, as ultimate factfinder, who must determine witness credibility and evidentiary weight. *Buczynski v. Workmen's Compensation Appeal Board (Richardson–Vicks, Inc.)*, 133 Pa.Commonwealth Ct. 532, 576 A.2d 421 (1990). In this role, the referee is free to evaluate the evidence offered and can accept or reject the testimony of any witness in whole or in part, including that of medical witnesses. *Northeastern Hospital v. Workmen's Compensation Appeal Board (Turiano)*, 134 Pa.Commonwealth Ct. 164, 578 A.2d 83 (1990). Here, the referee specifically found that Claimant's evidence in support of his claim was not credible and gave it no probative value. (Referee's Finding of Fact, No. 12.)

■ Although this court can and should consider the competency and sufficiency of evidence presented before a referee, the referee's assessment of witness credibility is not subject to review on appeal. *Regent Bottling Co. v. Workmen's Compensation Appeal Board (Reese)*, 10 Pa.Commonwealth Ct. 8, 309 A.2d 265 (1973). Even where we may have found otherwise, we are precluded, in our appellate role, from reweighing evidence or substituting our credibility determinations for those of the referee. *Lehman v. Workmen's Compensation Appeal Board (Temple University Hospital)*, 64 Pa.Commonwealth Ct. 381, 439 A.2d 1362 (1982). In order to

Indeed, all three doctors deposed by Claimant testified that in their opinion, to the requisite degree of medical certainty, Claimant's injuries were work-related. Thus, the referee's conclusion that Claimant did not sustain a work-related injury is built entirely on factual findings which have no rational basis in the record and, instead, are corruptions of the actual evidence of record.

prevail in his claim, Claimant, as burdened party, had to meet both his burden of production and his burden of persuasion. *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987). Here, although Claimant offered medical evidence which, if believed, was sufficient to meet his burden of proof, the fact remains that the referee found that it was not credible. Thus, Claimant could not prove entitlement to benefits because he failed in his burden to persuade the factfinder.

Claimant's argument, however, suggests that the referee only considered whether Claimant's injury was work-related in light of a single incident theory of recovery rather than as an injury caused by the repetitive trauma of work activities and that review of the evidence under the correct theory would require a different result. In Finding of Fact No. 4, the referee stated, "There was no specific incident that occurred at work on or before August 27, 1989, that may have caused the alleged injury." This finding suggests that the referee misunderstood Claimant's theory of recovery, which was based on disability caused by repetitive trauma from work activities rather than on a single work incident. (*See also*, Referee's Finding of Fact, No. 10.) Because we agree that the referee appears not to have considered the evidence in light of Claimant's repetitive trauma allegation, we feel constrained to remand this case. We cannot know whether the referee based his findings and/or credibility determinations on a misperception of the issue before him, or, if so, whether those findings and determinations would differ when considered in the context of a repetitive trauma theory of recovery. Accordingly, we will vacate the order of the Board and remand to give the referee an opportunity to reconsider the evidence and to modify his Findings of Fact and Conclusions of Law if he deems that such action is necessary.

## *ORDER*

AND NOW, this 12th day of July, 1994, the order of the Workmen's Compensation Appeal Board in the above-cap-

tioned matter is hereby vacated and the case is remanded for reconsideration in accordance with the foregoing opinion.

Jurisdiction relinquished.

SMITH, J., dissents.