the de novo trial or the appeal must be dismissed.

Pa.R.Crim.P., Rule 83(e), 42 Pa.C.S.A.

In argument before the Court of Common Pleas, Appellant's counsel advised the court that Appellant was apprised of his appellate rights at the December 16th proceeding. N.T. 8–29–95 at 8. The Commonwealth, on the other hand, stated differently and recounted that Appellant was advised of his right to appeal on August 29, 1994. Although the court was not presented with any transcript of the proceedings which occurred before the district justice, and despite the fact that no sworn witnesses testified as to what occurred during these proceedings, the court made a finding that Appellant was advised of his right to appeal back in August. There is no support for this finding from the record. In view of the fact that it is vital to advise a defendant of his appellate rights and that it is impossible to learn from the record whether Appellant was advised of his right to appeal the court's August determination, as well as the sentence imposed in December, we cannot find that Appellant has waived all claims related to the court's August ruling. Further, in an effort to save judicial resources we deem it wise on remand for the court to entertain any claims raised by Appellant which relate to the original finding of guilt and the imposition of the probationary sentence, as well as the court's decision to "revoke" that probation and impose a jail term.

Accordingly, we reverse the trial court's order quashing Appellant's appeal from his summary conviction. We remand this matter to the trial court for full consideration of Appellant's appeal.

POPOVICH, J., concurs in the result.

**LIGONIER TAVERN, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (WALKER), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 11, 1996.

Decided July 26, 1996.

William J. Ober, for Petitioner.

Kenneth B. Burkley, for Respondent.

Before McGINLEY and FLAHERTY, JJ., and RODGERS, Senior Judge.

FLAHERTY, Judge.

Ligonier Tavern (Employer) petitions for review of the July 18, 1995, order of the Workmen's Compensation Appeal Board (Board), which affirmed the decision of the referee [1] awarding "additional compensation" benefits to Julie Walker (Claimant) under Section 320 of the Workers' Compensation Act (Act),[2] because of Employer's violation of

---

1. Pursuant to the 1993 amendments to Section 401 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 701, referees are now called Workers' Compensation Judges. *See* Act 44, Act of July 2, 1993, P.L. 190. However, as this case was commenced prior to August 31, 1993, the effective date of the amendments, we shall use the term referee.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 672.

the Child Labor Law (Law).[3]

Claimant began working for Employer on December 23, 1991, at the age of seventeen years and almost four months.[4] Claimant was employed washing dishes and attained an average weekly wage of $95.72. On April 24, 1992, Claimant sustained a compensable work-related laceration of her right arm caused when she came into contact with broken glass in a trash bag. As a result of this laceration, Claimant was forced to cease working on April 24, 1992, and subsequently underwent surgery. Employer issued a Notice of Compensation Payable. Claimant began receiving the minimum weekly compensation at the rate of $151.67.

On March 23, 1993, Claimant filed a claim petition averring the loss of use of her right arm for all practical intents and purposes. Claimant also requested "additional compensation" pursuant to Section 320(a) of the Act.[5] The referee found that Claimant was less than 18 years of age at the time of her April 24, 1992, injury, that Claimant was illegally employed because her work permit was not obtained until May 18, 1992, and that Claimant was neither informed, nor required, by Employer to obtain a permit prior to commencing work. Pursuant to Section 320 of the Act, the referee awarded additional compensation in the amount of 50% of Claimant's present weekly compensation rate, which equated to $75.84. This elevated Claimant's weekly compensation to the new rate of $227.51. On appeal, the Board affirmed the referee's decision.[6] Employer now appeals to this court.[7]

On appeal,[8] Employer argues that the requirement of "additional compensation" con-

---

3. Act of May 13, 1915, P.L. 286, *as amended,* 43 P.S. §§ 41—71. Although this Act is commonly referred to as the Child Labor Law, the official title of the Act, "Title of Act," is located in the Historical and Statutory Notes at the end of 43 P.S. § 41, and contains the purpose of the Act, which is:

   [T]o provide for the health, safety, and welfare of minors: By forbidding their employment or work in certain establishments and occupations, and under certain specified ages; by restricting their hours of labor, and regulating certain conditions of their employment; by requiring employment certificates or transferable work permits for certain minors, and prescribing the kinds thereof, and the rules for issuance, reissuance, filing, return, and recording of same....

4. Claimant's date of birth is August 29, 1974.

5. Section 320(a) of the Act, 77 P.S. § 672(a), states:

   If the employe at the time of the injury is a minor, under the age of eighteen years, employed or permitted to work in violation of any provisions of the laws of this Commonwealth relating to minors of such age, compensation, either in the case of injury or death of such employe, shall be one hundred fifty per centum of the amount that would be payable to such minor if legally employed. The amount by which such compensation shall exceed that provided for in case of legal employment may be referred to as 'additional compensation.'

6. The Board correctly noted that its "scope of review for errors of law does not include review of constitutionality issues." (7/18/95 decision of the Board, p. 3.) Where the Board has not taken additional information, its scope of review is limited to determining whether the referee com-

mitted an error of law and whether necessary factual findings are supported by substantial evidence. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992).

7. During the pendency of the case before the Board, the Board granted Employer's supersedeas request on March 8, 1994. Thereafter, Employer filed a supersedeas request with the Board pending appeal to this Court. Employer's request was denied by the Board three (3) days after oral argument was heard by this court. Subsequently, Employer filed with this court a motion for stay pending action on its petition for review.

   On April 17, 1996, this court issued a per curiam order granting Employer's motion, contingent upon Employer posting security in the amount of $5,915.51. This security represents the "additional compensation" amount payable to Claimant for a period of eighteen (18) months after entry of the February 1, 1994 circulated decision and order of the referee.

   Employer then requested an extension of time to post the appropriate security. On May 6, 1996, this court issued a per curiam order granting an extension. Thereafter, Employer posted the required security. This court ultimately issued a per curiam order confirming its previous order granting the extension.

8. Employer avers that Claimant was released to return to work on August 31, 1993, and eventually returned to her pre-injury position without loss of wages on October 3, 1993. However, there has been no documentation presented to this court showing a grant of a termination, suspension, modification, nor evidence of a supplemental agreement between the parties. This court

tained in Section 320 of the Act violates art. III, § 18 of the Pennsylvania Constitution[9] regarding the reasonableness of compensation, and that awarding "additional compensation" also violates the Equal Protection Clause of the United States Constitution[10] and art. III, § 32 of the Pennsylvania Constitution,[11] by virtue of the Act's failure to establish reasonable and logical classifications regarding child labor law violations.[12]

■ Our standard of review in workers' compensation proceedings, where both parties have presented evidence, is whether constitutional rights were violated, an error of law was committed and whether necessary findings of fact were supported by substantial evidence. *Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper)*, 165 Pa.Cmwlth. 696, 645 A.2d 957 (1994). Where, as here, the Board does not take additional evidence, the referee is the ultimate factfinder. *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board (Krawczynski)*, 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973).

Section 8 of the Law requires that "[b]efore any minor under eighteen years of age shall be employed, permitted, or suffered to work in, about, or in connection with, any establishment, or in any occupation, the person employing such minor shall procure and keep on file ... an employment certificate ... issued for said minor." 43 P.S. § 49(a). Further, "any minor who has reached the age of sixteen may receive a transferrable

work permit instead of an employment certificate.... The Employer shall ensure that the minors have valid transferable work permits...." 43 P.S. § 49(b).

■ The duty of seeing that the minor obtains an employment certificate rests on the employer, who cannot shift this duty to its minor employees. *Radel v. Seib*, 105 Pa.Superior Ct. 75, 159 A. 182 (1932). Additionally, Section 320(b) of the Act states that the employer, not its insurance carrier, is liable for the "additional compensation." In essence, when an employer violates the Law, it is required to pay a claimant, out-of-pocket, an additional 50% of the claimant's current compensation rate, in this instance, an additional $75.84 per week.[13]

Citing to *Rudy v. McCloskey & Company*, 152 Pa.Superior Ct. 101, 30 A.2d 805 (1943), *aff'd per curiam on the opinion of the Superior Court*, 348 Pa. 401, 35 A.2d 250 (1944), Employer argues that additional compensation violates the aforementioned federal and state constitutional provisions by awarding unreasonable compensation by creating special legislation, and by failing to establish reasonable and logical classifications regarding violations of the Law.[14] In *Rudy*, the minor employee, while working as a construction laborer, fell fifty feet to his death. The minor was illegally employed solely because the employer failed to procure an employment certificate in accordance with the Law.[15] It was agreed that the widow and

shall, therefore, proceed under the presumption that Claimant's disability, i.e., loss of wages, continues.

9. Pa. Const. art. III, § 18 states that "[t]he General Assembly may enact laws requiring the payment by employers ... of reasonable compensation for injuries to employes arising in the course of their employment...."

10. U.S. Const. amend. XIV, § 1 states "[no] State ... [shall] deny to any person within its jurisdiction the equal protection of the laws."

11. Pa. Const. art. III, § 32 states that the "General Assembly shall pass no local or special law in any case which has been or can be provided for by general law...."

12. In Pennsylvania, the Law itself establishes classes of minors with different work status. For example: (1) children under age 14, with limited

exceptions, may not be employed; (2) minors between 14 and 16 are employable, as long as such employment does not interfere with school, but are prohibited from working in manufacturing or mechanical occupations; and (3) minors between 16 and 18 are barred from certain occupations, but may work during the entire year. *See* 43 P.S. §§ 41–71.

13. The Act of February 28, 1956, P.L. (1955) 1120, amended Section 320(b) of the Act and increased the amount of additional compensation from 10% to 50%.

14. *See* footnotes 9—12.

15. We note that Rudy, unlike the claimant in the present case, initially misrepresented to his employer that he was over eighteen years of age, so as to obtain employment. Although the Court in *Rudy* stated that it had no bearing on its deci-

two children of the minor would receive death benefits in installments amounting to $10,129.56 under the Act. However, a dispute arose over payment of another $10,-129.56 to the deceased minor's family, which was awarded as 100% additional compensation (double compensation) under the 1937 amendment to the Act, thus entitling a claimant to double compensation.

The single issue before the *Rudy* Court concerned the "constitutionality of [Section] 320 of the Act as applied to the class of claims *such as here presented.*" *Id.* at 105, 30 A.2d at 807 (emphasis added). The Court held that the payment of additional compensation of 100% to a minor employed in violation of the Law, considered either as compensation or a penalty, was so excessive as to violate the pertinent constitutional provisions.[16]

Employer's reliance on *Rudy*, to prove that 50% additional compensation is not reasonable under the Pennsylvania Constitution, is misplaced. *Rudy* holds that Section 320 of the Act, in effect in 1938, was unconstitutional because the award of additional compensation of 100% was excessive and, therefore, an unreasonable penalty to the employer. It was not an issue, and *Rudy* did not hold, that a lesser percentage of the weekly benefit would also be unreasonable. Despite its criticism of the Act's classification of injured illegally employed minors being eligible for the same percentage of additional compensation, the Court tacitly approved a lower percentage of additional compensation for illegally employed minors when it cited the legislature's reduction of additional compensation to 10% of normal compensation in the 1939 amendments to the Act.[17]

■ Employer notes that Claimant's average weekly wage, when combined with the additional compensation, results in a weekly compensation rate of $227.51. Employer ar-

gues this equates to an increase of nearly six (6) times Claimant's original compensation rate, thereby violating the above-mentioned state and federal constitutional provisions requiring reasonableness. Claimant argues, however, that her total gross earnings are totally irrelevant to the issue of additional compensation, and that the law is clear and unambiguous in requiring additional compensation under Section 320 of the Act. We agree. The Pennsylvania Supreme Court has held that the reasonableness of a compensation rate which is fixed by statute *does not depend upon the effect of the statute in an isolated case,* but depends upon the weight of the burden imposed on the state's economics taken as a whole. *Zahrobsky v. Westmoreland Coal Company,* 344 Pa. 446, 448, 25 A.2d 823, 824 (1942).

The *Rudy* Court addressed the fact that the legislature may impose reasonable penalties to enforce compliance with the Act, but held that a penalty, though payable as compensation, must be reasonable in amount and is open to objection *if excessive.* Thus, the *Rudy* Court did not hold Section 320 of the Act to be unconstitutional because it required additional compensation, but because it required 100%, or "double" compensation, as additional compensation. Likewise, we do not find Section 320 of the Act, requiring additional compensation in the amount of fifty percent (50%) of a claimant's compensation, excessive or unconstitutional. Claimant correctly notes that a number of cases have applied 50% additional compensation since the decision in *Rudy*. Indeed, this court in *Wingert & Brechbill v. Workmen's Compensation Appeal Board,* 44 Pa.Cmwlth. 55, 402 A.2d 1157 (1979), and *Saloon Restaurant Enterprises v. Workmen's Compensation Appeal Board (Martinez),* 75 Pa.Cmwlth. 408, 462 A.2d 337 (1983), awarded 50% additional compensation to minors who were illegally employed *only* because no work permits

---

sion, the Court noted "it may be observed that if the judgment is valid, Claimant's wards will benefit to the extent of over $10,000 as the fruits of decedent's deceit and fraud." *Id.* at 105, 30 A.2d at 807.

**16.** *See* footnotes 9—11.

**17.** The Act of June 21, 1939, P.L. 520, amended Section 320 of the Act by reducing the additional compensation from 100% to 10%. The Court found this amendment inapplicable to the case before it, however, because it affected substantive rights and could not, therefore, be retroactively applied.

were issued prior to the commencement of employment.[18] In these cases this court held that the language of Section 320 of the Act was "clear"[19] and "unambiguous."[20] We are cognizant, however, that neither case addressed the constitutionality of the additional compensation requirement of Section 320.[21]

■ We decline to hold that an award of 50% of regular compensation as additional compensation violates the previously mentioned state and federal constitutions by failing to establish reasonable and logical classifications regarding child labor law violations. As this court stated in *Saloon*, the language of Section 320 of the Act is "clear and unambiguous; [and] there is no intimation in that provision which would indicate that the Legislature intended a distinction between severe and minor violations of the child labor laws...." *Id.* 462 A.2d at 338. As the Supreme Court has stated, "[t]he strong presumption of constitutionality enjoyed by the acts of the General Assembly and the heavy burden of persuasion on the party have been so often stated as to now be axiomatic." *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 175, 507 A.2d 323, 331 (1986). Moreover, there is a "presumption in favor of the constitutionality of lawfully-enacted legislation, i.e., an act of assembly will not be declared unconstitutional unless it clearly, palpably and plainly violates the constitution." *Hayes v. Erie Insurance Exchange*, 493 Pa. 150, 155, 425 A.2d 419, 421 (1981) (citations omitted). Any doubts are to be resolved in favor of sustaining the legislation. *Id.*

In addition to being mandated by the Law, it is prudent business for an employer to establish the appropriate age of a minor before allowing the minor to begin his or her actual employment. By obtaining a work permit *prior* to the minor beginning employment, the employer is assured that the minor is permitted, under the Law, to work in the position for which he or she is being considered.[22] Indeed, the Law mandates that a permit be obtained prior to the occurrence of employment, not three weeks after the occurrence of an injury as employer did here.

■■ Employer correctly points out that Section 320 of the Act acts as a penalty for violating the Law. We believe, however, that the penalty imposed by the Act is central to insuring enforcement of the Law so as to effectuate its purpose, that is, to protect minors by requiring that employers only hire minors for jobs in accordance with the legislative mandates. Prior to the addition of Section 320 to the Act, minors injured in employment had a remedy in tort under common law. This remedy was lost when Section 320 was added to the Act in 1931. The intent of the Legislature was not only to provide minors with regular compensation for their injuries, but also to provide them with the fruits of the penalty which was designed to ensure that employers obey the provisions of the Law. Importantly, it must be noted that work permits provide valuable information ensuring, among other things, that the minor is of an age capable of working as allowed by law, is physically capable of performing the work that will be assigned by

18. This court in *Wingert* held that, in view of the clear words of the Act, employing a minor without a work permit was a sufficient basis for awarding additional compensation. In *Saloon*, the 17½ year old minor was employed as a dishwasher and was killed in an accidental shooting while in the course of his employment.

19. *Wingert*, 402 A.2d at 1160; *Saloon*, 462 A.2d at 338.

20. *Id.*

21. Although the court in *Saloon* acknowledged the existence of *Rudy*, it did not address the case because the constitutionality of Section 320 was not raised.

22. Additionally, two sections of the Act provide protection for an employer. Section 320(e) of the Act, 77 P.S. § 672(e), states:
    Possession of an employment certificate, duly issued and transmitted to the employer in accordance with the provisions of the child labor law and receipt thereof duly acknowledged by him, shall be conclusive evidence to such employer of his legal right to employ the minor for which employment such certificate has been issued.
Section 320(f) of the Act, 77 P.S. § 672(f), states:
    The possession of an age certificate, duly issued and transmitted to the employer by the school authorities of the school district in which the minor resides, shall be conclusive evidence to the employer of the minor's age as certified therein.

the employer, that the work will not adversely affect the minor's schooling, and that the minor's parent(s) are aware that the minor will be so employed.[23]

We hold that the statutory language of Section 320 of the Act is clear and unambiguous.[24] Further, we hold that Section 320 of the Act requiring additional compensation in the amount of 50% of the compensation due Claimant, when applied to violation of the Child Labor Law, is not excessive, but is reasonable as to amount. Moreover, the classification of minors under the age of eighteen was established with good reason, is uniform and not special legislation, and is thereby not violative of the Federal and Pennsylvania constitutions. Therefore, we find the Board did not err in affirming the decision of the referee which held Employer responsible for payment of 50% additional compensation to Claimant due to Employer's violation of the Law.

Accordingly, the July 18, 1995, order of the Board is affirmed. Employer is hereby directed to pay Claimant all past due compensation, additional compensation and interest as ordered by the February 1, 1994, decision of the referee.

### ORDER

NOW, July 26, 1996, we hereby affirm the July 18, 1995, order of the Board and direct Employer to pay Claimant all past due compensation, additional compensation and interest as ordered by the February 1, 1994, decision of the referee.

---

**23.** *See* 43 P.S. §§ 41–71.

**24.** Moreover, any substantive changes in the Act must occur through actions of the legislature, and not by judicial remedy through this court.