# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Steiner,                                :
                                               :
                    Petitioner                 :
                                               :
          v.                                   : No. 1383 C.D. 2018
                                               : Submitted: February 8, 2019
Workers' Compensation Appeal                   :
Board (Automatic Brewers & Coffee),            :
                                               :
                    Respondent                 :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED: August 1, 2019


Charles Steiner (Claimant), *pro se*, petitions for review of the August 29, 2018 order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of a workers' compensation judge (WCJ) denying his claim petition. We affirm.

Claimant worked as an assembly worker from September 3, 2015, to October 18, 2016, for Automatic Brewers and Coffee Devices, Inc. (Employer). On March 8, 2017, Claimant filed a claim petition alleging that he developed bilateral carpal tunnel syndrome on October 18, 2016, during the course and scope of his employment, due to the repetitive nature of his job duties. Claimant also filed a penalty petition alleging that Employer violated Section 406.1 of the

Workers' Compensation Act[1] by failing to timely file documents recognizing the injury. Employer denied the allegations and the matter was assigned to a WCJ.

Claimant testified before the WCJ on March 29, 2017, and June 28, 2017. He said that he worked 40 hours a week with occasional overtime making carrying cups and pods for espresso machines. He stated that from December 2015 through October 2016, he worked exclusively with an Ullo machine, which required twisting and repetitive movements of both hands. Supplemental Reproduced Record (S.R.R.) at 19a-21a, 65a, 68a.[2]

Claimant testified that sometime after December 2015 he began experiencing pain, swelling, and tingling in his hands. Claimant stated that he told his supervisors, Chad O'Toole and John Ruths, that he had pain and swelling and needed assistance in cutting the pods. Claimant said that his symptoms worsened from June 2016 to October 2016; although he told Mr. O'Toole and Mr. Ruths, they did not change his job duties. Claimant testified that by October 2016, he had constant swelling and pain, but he did not seek medical treatment because he "didn't realize what was going on." S.R.R. at 25a. He eventually went to a doctor, Bindu Kumar, M.D., on November 8, 2016. Dr. Kumar wrote him a prescription and gave him a note to avoid repetitive gripping, twisting, or lifting with his hands. Claimant testified that he provided this medical documentation to Mr. O'Toole and Robert Melikian, the owner of the company. S.R.R. at 25a-26a.

Claimant acknowledged that he left work on October 18, 2016, for treatment of a vertigo attack. He said that his vertigo was not related to the

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1.

[2] Claimant did not file a reproduced record. Employer filed a Supplemental Reproduced Record using the lower case "a," rather than "b," as required by Pa. R.A.P. 2173.

symptoms in his hands, but was part of the reason that he stayed off work. Claimant testified that he was willing to go back to work in November 2016, but Employer never offered him work within his restrictions; instead, Mr. Melikian told him, through a text message, not to come back to work until he was "100 percent." S.R.R. at 27a-29a.

Claimant testified that he receives physical therapy twice a week. He said that he must wear a brace whenever he leaves the house or whenever he engages in major activities. He explained that the symptoms in his hands affect his day-to-day activities such as putting on a shirt and buttoning buttons. Notwithstanding, he explained that he lives with and takes care of his mother; he cleans, cooks, goes grocery shopping, drives her to medical appointments, and helps her dress and bathe. S.R.R. at 35a-36a.

On cross-examination, Claimant admitted sending text messages to Mr. Ruths concerning vertigo problems and a resulting inability to drive. He said that those messages did not mention any wrist problems because vertigo "was the ongoing issue." S.R.R. at 46a. Claimant testified that he showed medical documentation regarding his wrist and hands, namely, a prescription dated November 8, 2016, to Mr. Melikian, but that no one made a copy of the prescription. S.R.R. at 47a-49a. Claimant said that Mr. Melikian wanted him to take a medical leave of absence on unemployment and not file for workers' compensation. S.R.R. at 49a. Claimant testified that he had not applied for any other jobs since October 2016 and had applied for social security disability.

Claimant presented the August 15, 2017 deposition testimony of Dennis Wayne Ivill, M.D., who is board-certified in physical medicine and rehabilitation. Dr. Ivill testified that his practice specializes in treatment of non-

surgical musculoskeletal conditions, such as carpal tunnel syndrome and DeQuervain's tenosynovitis. Dr. Ivill testified that Claimant came to him on April 28, 2017, complaining of hand, wrist, and thumb pain. Claimant described his work history as primarily involving repetitive activities on the Ullo machine. He also described his symptoms and his current course of physical therapy, splinting, and paraffin treatment. S.R.R. at 87a-88a. Dr. Ivill testified that when he asked Claimant if he had an injury, Claimant responded, "chronic repetitive trauma." S.R.R. at 114a. Dr. Ivill noted that on his intake form, Claimant marked June 2015 as the date his hand and wrist complaints began, but Claimant later told him that these problems arose in December 2015. Dr. Ivill testified that Claimant did not mention his vertigo or any neurological problems, and Dr. Ivill did not review any records regarding these conditions. S.R.R. at 120a-21a.

Dr. Ivill reviewed notes of Donald Leatherwood, M.D., Richard Dimonte, M.D., and Bindu Kumar, M.D. He analyzed EMG reports, performed an MRI of Claimant's bilateral wrists and hands, and performed a physical examination. Dr. Ivill said he also performed an EMG nerve conduction study on May 18, 2017, which revealed that Claimant had median nerve ulnar neuropathy at the wrist.

Dr. Ivill specifically noted that Claimant had no diabetic peripheral neuropathy that could be a source of Claimant's symptoms. He explained that if a person develops diabetic peripheral neuropathy, it almost always starts in the feet and then develops in the hands many years later. He added that diabetic peripheral neuropathy affects all fingers symmetrically, whereas carpal tunnel syndrome affects only the number 1, 2, and 3 digits. S.R.R. at 96a, 107a-08a.

4

Dr. Ivill testified that, based on his evaluations, including a positive Tinel's test, a positive Finkelstein's maneuver, and weakness and decreased sensation in Claimant's hands, he diagnosed Claimant with bilateral carpal tunnel syndrome and bilateral DeQuervain's tenosynovitis caused by the repetitive nature of his work activities. S.R.R. at 91a. Dr. Ivill said he attributed Claimant's pain to his job duties based on Claimant's description of his work, although he did not question Claimant about his other daily activities. S.R.R. at 122a-23a.

Dr. Ivill testified that he continues to treat Claimant twice a week, providing him with acupuncture, manipulation, oral and topical medication, pain patches, stimulators, and Biofreeze gel for comfort. He said that these treatments give Claimant temporary partial relief but that Claimant continues to have pain. Dr. Ivill opined that Claimant was not able to perform his pre-injury job. S.R.R. at 95a.

Employer presented the October 3, 2017 deposition testimony of Dr. Leatherwood, who is board-certified in orthopedic surgery with an added qualification in hand surgery. Dr. Leatherwood testified that he conducted an independent medical examination (IME) of Claimant on May 2, 2017. During this examination, Claimant provided work, injury, and medical histories. Claimant told Dr. Leatherwood that he had no prior problems with his hands, and that he was going to therapy and seeing a chiropractor three times per week. S.R.R. at 181a-184a.

Dr. Leatherwood noted Claimant's history of diabetes and vertigo. He reviewed Claimant's medical records including MRI studies, EMGs, lab data, and chiropractic notes. He testified that the MRI studies revealed normal or negative showings for trauma caused by work activities. Based on his review of emergency

5

room reports of October 19, 2016, through February 8, 2017, Dr. Leatherwood determined that Claimant left work on October 18, 2016, because of vertigo, dizziness, and passing out. He noted that Claimant's blood glucose level was 313 and that Claimant subsequently began treatment for severe, uncontrolled diabetes. He stated that in March 2017, Claimant's blood glucose level was still over 300.

Dr. Leatherwood also observed that Claimant had been out of work since October 2016, but during the May 2017 examination, Claimant reported that his hand and wrist conditions had improved only ten percent. Dr. Leatherwood testified that his physical examination of Claimant revealed that all of the muscles in Claimant's forearm, wrists, fingers, and thumbs were working properly. S.R.R. at 184a-87a, 199a.

Dr. Leatherwood testified that he did not find any evidence of a work-related injury occurring on October 18, 2016. S.R.R. at 190a. He said that he could not explain Claimant's complaints based on his testing, clinical examination, and a review of Claimant's job capacities. Dr. Leatherwood noted that Dr. Strohl of the Philadelphia Hand Center examined Claimant in February and March of 2017, and similarly found no objective findings to explain Claimant's symptoms. S.R.R. at 188a, 276a-84a.

Dr. Leatherwood stated that according to recent studies and orthopedic data, repetitive work can be a contributing factor to carpal tunnel syndrome only if it is also heavy and vibratory; simple repetitive work is not a contributing factor to carpal tunnel syndrome. S.R.R. at 190a-91a. Dr. Leatherwood also explained that if a person had problems related to repetitive work activities, he would expect withdrawal from that repetitive activity to improve symptoms, which did not occur with Claimant. Based on Claimant's

6

blood glucose levels, Dr. Leatherwood concluded, that the "clear and obvious reason" for Claimant's carpal tunnel syndrome was uncontrolled diabetes, which is a well-documented cause of peripheral neuropathy, including carpal tunnel syndrome. S.R.R. at 191a, 202a. Dr. Leatherwood opined within a reasonable degree of medical certainty that Claimant did not suffer a work injury in the course of his employment on October 18, 2016. He further opined that Claimant did not require additional medical treatment or any restrictions on work activities. S.R.R. at 203a-04a.

Mr. Melikian testified that Claimant complained about medical issues frequently but never offered related medical documentation. According to Mr. Melikian, Claimant complained about his hands occasionally, but he could not recall specific instances. Mr. Melikian understood that Claimant was hospitalized in October 2016 for vertigo or neurological problems that rendered him unable to drive. He repeated that Claimant never provided medical documentation about his medical problems. S.R.R. at 359a.

Mr. Melikian stated that he texted Claimant not to come back to work until he was "100 percent" recovered from his neurological problems because he worked with machinery. Mr. Melikian testified that while Employer tried to accommodate Claimant whenever he complained, he could not accommodate Claimant's restrictions regarding his hands and wrists because all of the work at Employer's plant required the use of both hands. Mr. Melikian said Claimant met with him in November 2016 and asked to be laid off so he could collect unemployment. However, Mr. Melikian stated that Claimant's job is still available to him. S.R.R. at 360a-61a, 365a, 370a, 377a.

7

Mr. Ruths testified that he worked for Employer as a production supervisor. He said that from September 2015 until June 2016, Claimant worked with the K-cup and upshot machines, lifting at most five-pound coffee bags and occasionally a 20-25 pound box. Mr. Ruths testified that from June 2016, Claimant worked on the Ullo machine, where he used a teaspoon to pour the product into pods at 20-30 pods per minute; after the machine sealed the pods, Claimant cut them out. Mr. Ruths testified that Claimant complained about pain in his hands but never said it was related to his work. He noted that Claimant was hospitalized on October 18, 2016, for vertigo and said that Claimant did not mention pain in his hands at that time. Further, Mr. Ruths said that Claimant did not give him any medical notes regarding his ability to perform his job. Specifically, he testified that Claimant never asked for accommodations while working on the Ullo machine. S.R.R. at 385a-87a, 392a, 395a, 402a.

The WCJ found that Claimant was not credible regarding an alleged work injury on October 18, 2016, and explained her reasoning as follows: (1) Claimant was treated for vertigo rather than bilateral carpal tunnel syndrome on October 18, 2016; (2) Claimant contradicted himself in giving his history to Dr. Ivill; and (3) Claimant contradicted himself in his own testimony. WCJ's Findings of Fact (F.F.) No. 3. The WCJ also found Dr. Leatherwood more credible and persuasive[3] than Dr. Ivill, stating that (1) Dr. Leatherwood had better credentials

---

[3] The burdened party in a workers' compensation proceeding must meet both its burden of production and its burden of persuasion to prevail. *Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper)*, 645 A.2d 957, 963 (Pa. Cmwlth. 1994). When a WCJ determines one witness is more credible and persuasive than another, the WCJ's assessment may be that the other witness is testifying truthfully, but not necessarily convincingly. *Green v. Workers' Compensation Appeal Board (US Airways)*, 155 A.3d 140, 149 n.15 (Pa. Cmwlth. 2017).

regarding this injury; (2) Dr. Leatherwood consulted more medical records in his review; (3) Dr. Leatherwood's findings were supported by Dr. Strohl's evaluations and other diagnostic tests; (4) Dr. Leatherwood's examination was more comprehensive; and (5) Dr. Ivill did not specify clinical or objective findings supporting each of his diagnoses. *Id.* The WCJ also credited Mr. Melikian's and Mr. Ruths' testimony that Claimant did not provide Employer any medical documentation. F.F. No. 6.

Based on these credibility determinations, the WCJ concluded that Claimant failed to satisfy his burden of proof supporting the award of benefits, and denied and dismissed his claim petition. The WCJ also concluded that Employer reasonably contested the petitions and denied Claimant's penalty petition. Claimant appealed to the Board, which affirmed the WCJ's decision.

On appeal to this Court,[4] Claimant argues that (1) the WCJ's decision was not supported by substantial evidence, (2) the WCJ capriciously disregarded evidence, and (3) the WCJ failed to issue a reasoned decision.[5]

Initially, we note that in a claim proceeding, the claimant bears the burden to establish all the elements necessary to support an award. *Delaware County v. Workers' Compensation Appeal Board (Baxter Coles)*, 808 A.2d 965, 967 (Pa. Cmwlth. 2002). The claimant must prove that an injury was sustained during the course and scope of his employment, the injury is causally related to

---

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Byfield v. Workers' Compensation Appeal Board (Philadelphia Housing Authority)*, 143 A.3d 1063, 1066 n.6 (Pa. Cmwlth. 2016).

[5] For the sake of clarity, we have reordered Claimant's arguments.

9

that employment, and the injury resulted in disability that continued for the period of time for which benefits are sought. *Id.* at 968. Where the causal relationship is not obvious, the claimant must establish that connection through unequivocal medical evidence. *Ruhl v. Workmen's Compensation Appeal Board (Mac-It Parts, Inc.)*, 611 A.2d 327, 330 (Pa. Cmwlth. 1992).

Additionally, it is a fundamental tenet of workers' compensation law that the WCJ has exclusive authority to determine the credibility of witnesses and the weight to be accorded evidence. *Rogele, Inc. v. Workers' Compensation Appeal Board (Hall)*, 98 A.3d 1195, 1204 (Pa. Cmwlth. 2018). The WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997). The WCJ's findings of fact will not be disturbed when they are supported by substantial, competent evidence. *Rogele*, 98 A.3d at 1204.[6]

Claimant first argues that because Dr. Leatherwood testified outside his area of expertise, the WCJ's decision was not supported by substantial evidence. However, we have repeatedly explained that, "[a]n expert medical witness in a workers' compensation proceeding is qualified to testify outside of his medical specialty, and any objection to that testimony goes to the weight of the evidence, not its competency." *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 145 (Pa. Cmwlth. 2004). In *Lombardo*, we rejected the precise argument that Claimant makes here, that the

---

[6] Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a finding. *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works)*, 862 A.2d 137, 143 n.6 (Pa. Cmwlth. 2004).

WCJ erred in relying on testimony regarding the claimant's diabetes where the medical expert was an orthopedic surgeon, not an expert in the field of diabetes. 698 A.2d at 1381. As in *Lombardo*, Dr. Leatherwood is an orthopedic surgeon who testified about Claimant's diabetic condition. The WCJ credited his testimony, and neither that credibility determination nor the weight the WCJ accorded that testimony is subject to appellate review. *Id.*

Claimant next argues that the WCJ capriciously disregarded evidence. In making this argument, Claimant relies entirely on testimony rejected by the WCJ as not credible. However, a capricious disregard of evidence occurs only when a fact-finder deliberately ignores relevant, competent evidence. *Williams*, 862 A.2d at 145. Where the WCJ's findings include lengthy summaries of witness testimony, the findings evince the WCJ's full consideration. *Id.* at 146. When a WCJ summarizes witness testimony but rejects certain testimony as not credible, that determination, by definition, is not a capricious disregard. *Id.* at 145. In this instance, the WCJ's 45 Findings of Fact include detailed summaries of each witness's testimony, reflecting that the WCJ did not ignore, but merely considered and rejected certain testimony as not credible. As previously noted, a WCJ's credibility determinations are not subject to review on appeal. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1991).

Finally, Claimant argues that the WCJ's decision was not a reasoned decision as required by Section 422(a) of the Act.[7] We have previously explained

---

[7] Section 422(a) of the Act provides:

All parties to an adjudicatory proceeding are entitled to a reasoned

**(Footnote continued on next page…)**

that, "[t]he reasoned decision requirement is simply that the WCJ must articulate some objective reasoning to facilitate effective appellate review . . . ." *Green v. Workers' Compensation Appeal Board (US Airways)*, 28 A.3d 936, 940 (Pa. Cmwlth. 2011).

Claimant's reasoned decision argument is again premised on his complaint that Employer's medical witness, Dr. Leatherwood, is not an expert in the field of diabetes. As previously noted, Dr. Leatherwood's testimony outside of his specialty goes to the weight of the evidence, a determination that is solely within the province of the WCJ and cannot be disturbed on appeal. *Williams; Delaware County*. Furthermore, in crediting Dr. Leatherwood's testimony, the WCJ cited Dr. Leatherwood's credentials, his clinical examination, and his review of medical records and diagnostic studies. She also credited Employer's fact witnesses while discrediting Claimant's testimony regarding his alleged October

---

**(continued…)**

> decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence. Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834.

12

18, 2016 work injury. The WCJ's decision explains the basis for her credibility determinations and sets forth conclusions of law based thereon. Therefore, we conclude the WCJ satisfied the reasoned decision requirements of Section 422(a).

After careful review, we conclude that the WCJ's decision is supported by substantial evidence and reflects no error of law, and that the Board properly affirmed the WCJ's decision. Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles Steiner,                        :
                                        :
                    Petitioner          :
                                        :
        v.                              :  No. 1383 C.D. 2018
                                        :
Workers' Compensation Appeal            :
Board (Automatic Brewers & Coffee),     :
                                        :
                    Respondent          :


# **O R D E R**


AND NOW, this 1ˢᵗ day of August, 2019, the order of the Workers' Compensation Appeal Board, dated August 29, 2018, is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge