G & B PACKING, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (LINDSAY and JFC Temps, Inc.), Respondents.

JFC TEMPS, INC., Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (LINDSAY and G & B Packing), Respondents.

Commonwealth Court of Pennsylvania.

Submitted Oct. 14, 1994.
Decided Jan. 11, 1995.
Reargument Denied March 6, 1995.

(December 13, 1993 order, pp. 72–73).

Paul L. Zeigler, for petitioner, respondent G & B Packing.

Joseph S. Bekelja, for respondent, petitioner JFC Temps, Inc.

Before PELLEGRINI and FRIEDMAN, JJ., and DELLA PORTA, Senior Judge.

FRIEDMAN, Judge.

G & B Packing (G & B) and JFC Temps, Inc. (JFC)[1] appeal from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's[2] decision to award total disability benefits to Alonzo Lindsay (Claimant). G & B also appeals from that part of the Board's order reversing the referee's decision to hold JFC responsible for paying Claimant's benefits. The Board concluded that G & B, rather than JFC, was Claimant's employer and, thus, bore that responsibility.

JFC hired Claimant and provided him with job assignments, including a long-term as-

---

1. JFC is an employment agency that supplies temporary help to businesses for a fee. (R.R. at 3a.)

2. Referees are now called Workers' Compensation Judges under the new amendments to the Workers' Compensation Act effective August 31, 1993. However, because this case was before the Referee prior to the effective date of those amendments, we will refer to the Referee as such and not as Workers' Compensation Judge.

signment with G & B as a tractor-trailer driver. (Referee's Findings of Fact, Nos. 1 & 19.) On March 18, 1988, while exiting a G & B truck, Claimant slipped and fell. As he fell, Claimant kept "hitting his leg on the side coming all the way down from the truck." (Referee's Finding of Fact, No. 2.) Three days later, Claimant went to Harrisburg Hospital to have his leg examined. Tests revealed blood clots in the leg, and the leg was amputated a few days later. (Referee's Finding of Fact, No. 3.)

■ Subsequently, Claimant filed a Claim Petition seeking compensation from JFC. JFC filed an answer stating that it was not Claimant's employer and petitioned the Bureau of Workers' Compensation to join G & B as an additional defendant in Claimant's action, alleging that G & B was Claimant's responsible employer.[3] G & B answered by denying that it was Claimant's employer on the date of his injury. Nevertheless, G & B was joined as a party to this action.

At hearings held before the referee, all three parties presented evidence. Regarding Claimant's injury, Claimant testified on his own behalf and presented the testimony of two doctors. Dr. Michael Sams, a specialist in internal medicine and cardiovascular disease, testified that the blood clot which developed in Claimant's leg was causally related to Claimant's fall. (Referee's Finding of Fact, No. 7.) Dr. Jere W. Lord, Jr., a vascular surgeon, also testified to the causal relation-

ship between the blood clot and Claimant's fall. In addition, he explained how the blood clot developed from Claimant hitting his leg on the truck. (Referee's Findings of Fact, Nos. 10–14.) The referee found the testimony of Dr. Lord and Dr. Sams to be unequivocal.[4] (Referee's Finding of Fact, No. 27.)

■ As to the responsible employer issue, G & B presented the testimony of its operations manager who testified about various factors related to Claimant's work. (Referee's Finding of Fact, No. 18.) JFC presented no evidence on this issue. Upon reviewing the testimony presented, the referee concluded that an employment and a master-servant relationship existed between JFC and Claimant, and that Claimant had met his burden of proof entitling him to receive benefits.[5] (Referee's Conclusions of Law, Nos. 2 & 4.) Thus, the referee ordered JFC to pay Claimant total disability benefits. (Referee's Op. at 9.)

The Board affirmed the referee's award of compensation but reversed the referee's determination that JFC had been Claimant's employer at the time of Claimant's injury. Instead, the Board concluded that G & B was responsible for paying Claimant's compensation benefits. (Board's Op. at 7.)

■ On appeal,[6] JFC and G & B (collectively, Petitioners) both argue that Claimant did not meet his burden of proving a compensable injury. G & B also maintains that the

---

3. The term "responsible employer" refers to the entity that is responsible for paying Claimant's workers' compensation benefits.

4. JFC presented the testimony of two doctors who contradicted the conclusions of Claimant's witnesses. However, the referee found that Claimant's witnesses were more credible than JFC's witnesses. (Referee's Finding of Fact, No. 27.)

5. A claimant has the burden of establishing a right to compensation and all of the elements necessary to support an award, such as a causal relationship between a work-related incident and the claimant's alleged disability and the existence of an employer-employee relationship at the time of the injury. *Whiteside v. Workmen's Compensation Appeal Board (Unisys Corp.),* —— Pa.Com-

monwealth Ct. ——, 650 A.2d 1202 (1994); *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Bd. of Educ.),* 508 Pa. 360, 498 A.2d 800 (1985); *Gabonay v. Workmen's Compensation Appeal Board (United Auto Workers, Local 2055),* —— Pa.Commonwealth Ct. ——, 650 A.2d 1208 (1994).

6. Our scope of review is limited to determining whether an error of law was committed, whether constitutional rights were violated, or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

Board erred in finding it to be the responsible employer.

## I.

Petitioners contend that the record does not contain substantial, competent evidence to support the referee's finding that Claimant's disability was causally connected to Claimant's fall. Specifically, Petitioners claim that both Dr. Sams' and Dr. Lord's testimonies are equivocal and, thus, Claimant has not established a right to benefits. We disagree.

In a claim petition proceeding, a claimant must prove a causal relationship between a work-related incident and a disability. *Lewis v. Workmen's Compensation Appeal Board (Pittsburgh Bd. of Educ.)*, 508 Pa. 360, 498 A.2d 800 (1985). Where, as here, an obvious causal connection between the disability and the alleged cause does not exist, the claimant can establish that connection through unequivocal medical testimony. *Id.* If such testimony is necessary, a claimant's medical witnesses must testify that in their professional opinions, the disability resulted from the alleged cause, not that the injury "may have" resulted from the alleged cause. *Id.* If the testimony is based only upon possibilities, then that testimony is equivocal and not legally competent to establish a causal relationship. *Id.*

The determination as to whether expert testimony in a workers' compensation proceeding is equivocal so as not to be competent evidence is a question of law, subject to our review. *Cyclops Corp./Sawhill Tubular Div. v. Workmen's Compensation Appeal Board (Paulsen)*, 158 Pa.Commonwealth Ct. 595, 632 A.2d 617 (1993), *appeal denied,* — Pa. ——, 645 A.2d 1320 (1994).

First, Petitioners argue that Dr. Sams' testimony was equivocal because it was based on possibilities; specifically, Dr. Sams stated that there was a "good probability" that the blunt trauma "could have" caused a new problem which "could have" led to an embolization in the leg. We do not believe that these statements make Dr. Sams' testimony equivocal.

In *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Commonwealth Ct. 202, 465 A.2d 132 (1983), this court stated that for testimony to be unequivocal, every word does not have to be certain, positive, and without reservation or semblance of doubt. The medical witness' entire testimony must be taken as a whole, and this court's decision as to unequivocality should not rest upon a few words taken out of context. *See Lewis.* Furthermore, "[t]he rationalization of a witness' testimony and the acceptance of those portions thereof on which to make findings and an award is the province of the referee, and is not a review prerogative of this Court." *Blue Bell Printing v. Workmen's Compensation Appeal Board (Montgomery Pub. Co.)*, 115 Pa.Commonwealth Ct. 203, 207, 539 A.2d 933, 935 (1988). The appearance of inconsistencies in a medical expert's testimony does not render that testimony equivocal. *Wetterau, Inc. v. Workmen's Compensation Appeal Board (Mihaljevich)*, 148 Pa.Commonwealth Ct. 55, 609 A.2d 858 (1992).

Dr. Sams testified as follows:

Q. So based on your review, do you have an opinion regarding the cause of the occlusion and, if so, what are you basing that upon?

. . . .

Q. Do you have an opinion, a medical opinion, Doctor?

A. Yes.

Q. And can you state that opinion with a reasonable degree of medical certainty?

A. Yes.

Q. And what is that opinion?

A. Based upon my review of the records and what I could gather as his physical state prior to this incident, I feel that there is a good probability that this type of blood

[sic] trauma could have aggravated a pre-existing problem or could have caused a new problem which could have caused embolization in the leg. . . .

Q. And, again, you have stated that this is a probable cause, and is that with a reasonable degree of medical certainty in your mind?

A. It's a complex issue. A causal relationship, I think, exists. In fact, I will state that I believe that a causal relationship exists in this case.

Q. And does that exist within a reasonable degree of medical certainty?

A. Yes.

(R.R. at 69a–70a.)

Although Petitioners are correct in noting that Dr. Sams used terms such as "good probability" and "could have," Dr. Sams nonetheless stated that, within a reasonable degree of medical certainty, a causal relationship existed in this case. (R.R. at 70a.) As such, when viewed in its entirety, Dr. Sams' testimony unequivocally establishes that Claimant's injury was related to his fall from the truck.

■ Second, Petitioners also contend that Dr. Lord's testimony is equivocal. Dr. Lord testified that Claimant suffered a groin injury when he fell from the truck. Dr. Lord explained that the groin injury led to damage of Claimant's femoral artery, resulting in the development of the blood clot. (Referee's Finding of Fact, No. 9.) Petitioners claim that there is no evidence in the record indicating that Claimant suffered a groin injury and, thus, Dr. Lord's testimony, which is predicated upon Claimant suffering a groin injury, is equivocal. Again, we disagree.

■ While we recognize that a medical expert's testimony is equivocal if it is based on facts not supported by evidence in the record, *McGraw–Edison/Power Systems Div. v. Workmen's Compensation Appeal Board (Rendziak)*, 62 Pa.Commonwealth Ct. 302, 436 A.2d 706 (1981), the record here supports Dr. Lord's conclusion that Claimant suffered a groin injury. Dr. Lord based his opinion on an examination of Claimant, a review of Claimant's medical records, and a review of the depositions of the Claimant and several physicians. (R.R. at 196a–97a.) Those sources indicated that Claimant had two injuries, one to the foot and another to the right groin, where Dr. Lord determined the blood clot originated. (R.R. at 201a.) Further, Dr. Lord connected the blood clot to the fall due to the absence of a hypercoagulable state, substantiated by the fact that clotting occurred *only* in Claimant's right lower extremity. (R.R. at 203a.) Moreover, Dr. Lord's opinion is supported by Claimant's own testimony (*see, e.g.*, R.R. at 20a, 98a–99a), found credible by the referee. *McGraw–Edison/Power Systems Div.*

Thus, Claimant proved, with unequivocal medical evidence, that his leg injury was causally related to his fall at work on March 18, 1988.

II.

In its individual argument, G & B contends that the Board erred in reversing the referee's decision that JFC was Claimant's employer. G & B asserts that JFC controlled vital aspects of Claimant's work and, therefore, was Claimant's employer. We agree.[7]

■ While there is no standard formula for determining the existence of an employer/employee relationship, the most important factor is evidence of actual control or the right to control the work to be done and the manner of its performance. *Wetzel v. City of Altoona*, 152 Pa.Commonwealth Ct. 309, 618 A.2d 1219 (1992). At first glance, it seems that G & B controlled Claimant's work be-

---

7. "Whether an employer/employee relationship exists is a question of law which must be determined on the basis of the facts of an individual case." *Gabonay v. Workmen's Compensation Appeal Board (United Auto Workers, Local 2055)*, —— Pa.Cmwlth. ——, 650 A.2d 1208, 1209 (1994), quoting *Industrial Abrasives, Inc. v. Workmen's Compensation Appeal Board (Caceres)*, 157 Pa.Commonwealth Ct. 558, 562, 630 A.2d 547, 548 (1993).

cause it gave Claimant instructions at the beginning of each day as to what he was supposed to deliver and to where. (Referee's Finding of Fact, No. 20.) However, upon more careful consideration, it becomes apparent that G & B actually had little control over Claimant's work.

■ When an employee is furnished by one entity to another and a dispute exists as to which entity is the "employer" for workers' compensation purposes, factors indicating that an employee remains in the service of the original employer include

> the original employer's right to select the employee to be loaned and to discharge him at any time and send another in his place, the loaned employee's possession of a skill or special training required by the work for the second employer, and employment at a daily or hourly rate for no definite period.

*Shreiner Trucking Co. v. Workmen's Compensation Appeal Board (Wagner)*, 97 Pa.Commonwealth Ct. 182, 189, 509 A.2d 1337, 1340–41 (1986). Moreover, "the fact that the second employer designates the work to be done and where it is to be done does not militate against the first employer-employee relationship." *Id.; see also Daily Express, Inc. v. Workmen's Compensation Appeal Board (Chamberlain)*, 46 Pa.Commonwealth Ct. 434, 406 A.2d 600 (1979).

The issue of control was specifically addressed by this court in *Accountemps v. Workmen's Compensation Appeal Board (Myers)*, 120 Pa.Commonwealth Ct. 489, 548 A.2d 703 (1988). In *Accountemps*, a temporary job agency assigned the claimant to Spectrum Arena to perform accounting work. The claimant had the option of accepting or refusing the placement and was already trained in the area for which her services were required. The agency possessed the responsibility of selecting the person to be placed for the job and providing the hours and the rate of pay. The agency was also aware of the claimant's skills prior to placing her on their personnel inventory.

The court in *Accountemps* ruled that the temporary job agency was the claimant's employer because the agency selected the claimant for the temporary job, determined the amount she was paid and paid her salary. Most importantly, the court relied on the fact that the borrowing company, Spectrum Arena, did not have to train or instruct the claimant as to how to perform the basic job because she was already in possession of a skill and special training required for the temporary assignment.

■ Similar to the claimant in *Accountemps*, Claimant here was hired by JFC and included on its personnel inventory for placement in 1988. (R.R. at 15a–16a; Referee's Finding of Fact, No. 1.) Because Claimant was already a licensed and trained tractor-trailer driver, JFC chose Claimant from its personnel inventory for specific truck driving assignments with JFC's clients. (R.R. at 16a, 35a, 40a; Referee's Finding of Fact, No. 1.) Claimant was assigned to G & B Packing as a Class 3 licensed truck driver and required no special training. (R.R. at 40a; Referee's Findings of Fact, Nos. 19–20.) G & B did not have control over which driver was sent. (R.R. at 123a–24a; Referee's Finding of Fact, No. 18.) In fact, Claimant had the option to accept or reject each job placement made by JFC as established by his refusal to accept a previous placement to M. Glosser Steel. (R.R. at 39a–40a.)

Furthermore, like the temporary agency in *Accountemps*, JFC controlled Claimant's salary and paid him.[8] (Referee's Finding of Fact, No. 18.) If Claimant was sick or otherwise unable to work, G & B would contact JFC for another driver. (R.R. at 124a; Referee's Finding of Fact, No. 19.) If there was a problem with his performance, G & B did not have the power to fire Claimant; rather, it could merely request a replacement from JFC. (R.R. at 127a–28a; Referee's Finding

---

8. Claimant was given time slips by JFC, returned them to JFC, and was paid by JFC. (R.R. at 18a–19a.)

of Fact, No. 20.) Conversely, if Claimant was not going to show up for work or was to be late, or if he had a question as to his job responsibilities, he would contact JFC. (R.R. at 17a.)

Based on their similarity to circumstances in *Accountemps*, these facts establish that JFC, not G & B, was Claimant's employer.[9] Accordingly, the Board erred in determining that, because "[c]ontrol and supervision of Claimant's performance as a truck driver was in the hands of G & B," Claimant was the employee of G & B. (Board's Op. at 5.) Therefore, we reverse that portion of the Board's order determining that G & B is the responsible employer.

### ORDER

AND NOW, this 11th day of January, 1995, the order of the Workmen's Compensation Appeal Board, dated May 17, 1994, at Docket No. A93–1270, is hereby REVERSED with regard to the determination that G & B Packing is the responsible employer. In all other respects, the decision of the Board is AFFIRMED.

---

9. JFC refers us to *English v. Lehigh County Authority*, 286 Pa.Superior Ct. 312, 428 A.2d 1343 (1981), to support its contention that G & B was the responsible employer here. We do not find *English* controlling. In *English,* the entity in control of the work-site instructed and trained the employee in how to perform the duties required by the job. That is not the case here. *See Accountemps.*