**Robert MERCHANT, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (TSL, LTD.), Respondent.**

**TSL, Ltd., Petitioner,**

v.

**Workers' Compensation Appeal Board (Merchant), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 30, 2000.
Decided Sept. 1, 2000.

Cynthia M. Porta, Pittsburgh, for petitioner, Robert Merchant.

Gregory T. Kunkel, Pittsburgh, for respondent, TSL, Ltd.

Before COLINS, Judge, McGINLEY, Judge and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

Claimant Robert Merchant and Employer TSL, Ltd. (TSL) each petition for review of the December 2, 1999 order of the Workers' Compensation Appeal Board (Board) that reversed in part and affirmed in part the October 27, 1998 decision of the Workers' Compensation Judge (WCJ) granting Claimant's claim petition and directing Employer to commence payment of total temporary disability payments in the amount of $248.06 per week effective August 16, 1995, less a credit for payments made to Claimant of $189.88 per week under the workers' compensation law of West Virginia. Specifically, the Board reversed those parts of the WCJ's decision and order awarding benefits to Claimant from August 16 to September 8, 1995 and finding that Claimant's diabetes insipidus was work-related. The Board affirmed the remainder of the decision in all other respects.

For the reasons that follow, we vacate that portion of the Board's order providing that Claimant receive total temporary disability benefits as of September 8, 1995 and remand to the Board to remand to the WCJ for a determination as to when Claimant finally stopped receiving workers' compensation payments from West Virginia. Further, we affirm that portion of the order providing that Claimant failed to prove by unequivocal medical testimony that his diabetes insipidus was work-related.

On August 15, 1995, Claimant sustained a work-related injury in the course of his employment as a paint and body man. Specifically, he was injured when, in the course of replacing some doors and frames, he fell onto a concrete floor as a result of an electrical shock that occurred when he was welding a metal doorframe.

On October 2, 1995, Claimant filed two identical claim petitions, naming both TSL and Transportation Services, Inc. as his employer. Transportation Services, Inc. did not file an answer to the claim petition, but TSL responded that it was a West Virginia corporation, that Claimant was not an employee of Transportation Services, Inc.,[1] that Claimant was receiving compensation pursuant to a claim he had filed in West Virginia and that, accordingly, Claimant was ineligible to receive any compensation in Pennsylvania by virtue of Section 322 of the Workers' Compensation Act (Act).[2] (Findings of Fact Nos. 2 and 3.)

In support of his claim petition, Claimant presented the deposition testimony of Dr. Gunasiri Samarasinghe and Dr. Anne F. Walczak. Dr. Samarasinghe first saw Claimant in January 1996. Dr. Samarasinghe took a history from Claimant and

---

1. The WCJ concluded that TSL was Claimant's statutory employer. As neither party disputes that determination, we will not elaborate upon the findings leading to that determination.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 677.

then conducted a physical examination of him. A board-certified anesthesiologist with special qualifications in pain management, the doctor diagnosed Claimant with cervical pain syndrome. The doctor opined that Claimant's condition was causally related to the August 1995 work incident "because it was the type of injury that can cause cervical pain syndrome and because the Claimant was doing fine prior to the injury." (Finding of Fact No. 17.)

Further, Dr. Samarasinghe testified that Claimant was incapable of returning to his pre-injury position due to the upper body activities involved and that his "prognosis for recovery was guarded because of the length of time he has been symptomatic." (Finding of Fact No. 17.) More specifically, the doctor stated that "Claimant could tolerate a sedentary level of work and progress upward, with a weight restriction of 10–20 pounds if his next examination is positive." (Finding of Fact No. 18.) The doctor opined that "Claimant should avoid any bending, twisting, stooping or reaching activities, particularly using the upper body, but he did not issue a prescription for restrictions since the Claimant was already off work." (Id.) Finally, the doctor testified that "Claimant could drive a car since he showed no side effects from his medication, and he could also work in a position that would permit him to change positions." (Id.)

Claimant also submitted the deposition testimony of Dr. Walczak, board-certified in internal medicine with a subspecialty in endocrinology. She initially saw Claimant in late August or early September of 1995.[3] The doctor stated that Claimant was going to the bathroom about every fifteen minutes around the clock, with the normal being around four to six times per day. In addition, she testified that, after the work episode, Claimant complained of hand tremors, several muscle aches and fatigue.

After performing a physical examination of Claimant, Dr. Walczak diagnosed diabetes insipidus and prescribed him DDAVP, a synthetic equivalent of the deficient antidiuretic hormone.

When Dr. Walczak saw Claimant on February 8, 1996, he was off the DDAVP medication and was able to sleep through the night without urination. During the day, Claimant was urinating every three hours or so. Noting that Claimant's prognosis with respect to the diabetes insipidus was uncertain, the doctor "opined that the fall at work from the electric shock probably caused the diabetes insipidus and could have caused the Claimant's neck pain and subsequent headaches as well, but she deferred to the Claimant's other doctors' opinions for the headache and neck problems." (Finding of Fact No. 23.) Finally, Dr. Walczak stated that, if Claimant's condition remains stable with regard to the diabetes insipidus and he has access to bathroom facilities and water, he should be able to perform work. (Finding of Fact No. 24.)

TSL presented the testimony of Jon Hubell, employed by TSL as a service manager at Transportation Services, Inc. He testified that it was his duty to oversee the maintenance of the trucking fleet, that he was Claimant's immediate supervisor and that he gave Claimant his daily assignments. The WCJ used Mr. Hubell's testimony largely to determine the identity of Claimant's statutory employer, which is not at issue on appeal. In addition, the WCJ cited Mr. Hubell's testimony in support of a finding that TSL failed to establish that work was available to Claimant within his limitations. Specifically, the WCJ found that

> Mr. Hubell testified that TSL made a job available for the Claimant and would make accommodations, but he was not able to state what the salary would be,

3. Dr. Walczak testified that she first saw Claimant on March 22, 1995, which is obviously incorrect since the injury occurred on August 15, 1995. Claimant testified that he first saw her in late August or early September of 1995, which is consistent with the record as a whole. (January 29, 1996 Hearing, N.T. 12–13; R.R. 17–18)

and he had no knowledge of the restrictions placed upon the Claimant by his doctors, nor was he aware of the existence of any release returning the Claimant to work issued by any of his doctors.

(Finding of Fact No. 32.)

With regard to Claimant's medical witnesses, the WCJ made the following finding:

31. I also find the credible testimonies of Claimant's doctors that the Claimant's diabetes insipidus, headaches and neck pain are the result of the work incident that occurred on August 14, 1995, when the Claimant sustained an electrical shock. The Defendant–Employer did not rebut the Claimant's medical experts' testimony, and it is accepted as fact that his medical problems are work related. While Dr. Walczak credibly testified that the diabetes insipidus is virtually healed, the headaches and neck pain, according to Dr. Samarasinghe, had not completely resolved at the date of his deposition; therefore, the Claimant's work injury is ongoing, although improved significantly.

(Finding of Fact No. 31.)

With regard to the compensation payments from West Virginia, the WCJ found that

Claimant is being paid workers' compensation benefits, including the payment of medical bills, under the provisions of the West Virginia Workers' Compensation Act at the rate of $189.88 per week, and he would be entitled to total disability payments under the provisions of the Pennsylvania Workers' Compensation Act at the rate of $248.06 per week.

(Finding of Fact No. 33.)

Accordingly, the WCJ granted Claimant's claim petition against TSL, concluding that it was the responsible employer

for purposes of workers' compensation benefits. Further, having determined that Claimant's claim petition was not barred by Section 322 of the Act, the WCJ denied TSL's motion to dismiss. Thus, the WCJ entered an order directing TSL to commence payment of total disability payments to Claimant in the amount of $248.06 per week effective August 16, 1995, less a credit for the West Virginia payments made to him of $189.88 per week from the date those payments commenced to the date those payments ceased.

The Board reversed those parts of the WCJ's decision and order that awarded benefits from August 16 to September 8, 1995 and found that Claimant's diabetes insipidus was work-related. The Board affirmed the WCJ's decision and order in all other respects. Claimant's and TSL's timely petitions for review to this Court followed.

On appeal, TSL alleges that the Board erred in applying and construing Section 322 of the Act. Claimant argues that the Board erred in concluding that Dr. Walczak's testimony that Claimant's diabetes insipidus was work-related was equivocal.[4] We turn first to the Board's interpretation of Section 322 of the Act.

I

As part of the 1993 amendments to the Act, the legislature amended Section 322 to prohibit the concurrent receipt of workers' compensation benefits under Pennsylvania law and the laws of another state for the same injury. In pertinent part, Section 322 provides as follows:

It shall be unlawful for any employe to receive compensation under this act if he is at the same time receiving workers' compensation under the laws of the

4. We are limited to determining whether constitutional rights were violated, an error of law was committed, or whether the necessary findings of fact are supported by substantial evidence. *Sears, Roebuck & Co. v. Workers' Compensation Appeal Board (Lear)*, 707 A.2d 618 (Pa.Cmwlth.1998).

Federal Government or any other state for the same injury. . . .

77 P.S. § 677.

TSL argues that Section 322 should be construed to prohibit an employee from receiving *any* Pennsylvania benefits if he has already received benefits under the laws of another state. Thus, TSL contends that the claim petition here should have been dismissed.

In support of its position and for purposes of contrast, TSL cites a case from this Court decided prior to the effective date of the 1993 amendments to the Act: *Robert M. Neff, Inc. v. Workmen's Compensation Appeal Board (Burr)*, 155 Pa. Cmwlth. 44, 624 A.2d 727 (1993). In *Neff,* the employer's principal place of business was Ohio, but the claimant worked for the employer solely at its Mars, Pennsylvania location. When the employer hired Burr, he signed an agreement providing that Ohio's Workers' Compensation Law was to be the exclusive remedy for any work-related injury claim. The employer did not carry Pennsylvania workers' compensation insurance and had not filed a certificate documenting coverage in another state.

When Burr was subsequently injured while working at the employer's Mars, Pennsylvania location, he began receiving workers' compensation benefits from Ohio. The claimant then filed a Pennsylvania petition for compensation, noting that he was receiving compensation under Ohio law, but seeking Pennsylvania jurisdiction over his claim and Pennsylvania benefits for his injury. The employer contested the petition, arguing that the claim should be denied because of the agreement providing that Ohio's compensation law was to be the exclusive remedy and Section 305.2(b) of the Act recognized such agreements.[5]

We affirmed the Board's order awarding Burr Pennsylvania benefits as a supplement to the primary award of benefits under the Ohio workers' compensation system, holding that

> [b]ecause Claimant is a resident of Pennsylvania, the Commonwealth has a substantial interest in his welfare and subsistence as a disabled worker, and this interest is promoted by supplementing those benefits awarded by the Ohio Industrial Commission. [*Thomas v. Washington Gas and Light,* 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980).] As a resident injured while working in Pennsylvania, Claimant remains entitled to all compensation and medical benefits available under the Act,

---

**5.** Section 305.2(b), entitled, "Injuries occurring extraterritorially," provides as follows:

(b) The payment or award of benefits under the workmen's compensation law of another state, territory, province or foreign nation to any employe or his dependents otherwise entitled on account of such injury or death to the benefits of this act shall not be a bar to a claim for benefits under this act; provided that claim under this act is filed within three years after such injury or death. If compensation is paid or awarded under this act:

(1) The medical and related benefits furnished or paid for by the employer under such other workmen's compensation law on account of such injury or death shall be credited against the medical and related benefits to which the employe would have been entitled under this act had claim been made solely under this act.

(2) The total amount of all income benefits paid or awarded the employe under such other workmen's compensation law shall be credited against the total amount of income benefits which would have been due the employe under this act, had claim been made solely under this act.

. . . .

Nothing in this act shall be construed to mean that coverage under this act excludes coverage under another law or that an employe's election to claim compensation under this act is exclusive of coverage under another state act or is binding on the employe or dependent, except, perhaps to the extent of an agreement between the employe and the employer or where employment is localized to the extent that an employe's duties require him to travel regularly in this State and another state or states.

77 P.S. § 411.2(b).

regardless of where Employer is insured.

*Neff,* 624 A.2d at 733. Further, we held that nothing in the language of Section 305.2(b) of the Act, 77 P.S. § 411.2(b), permits an employer to enter into a future agreement with an employee to vary the amount of compensation to be paid.[6] We stated that, "[t]o hold otherwise would permit employers to require applicants and employees to waive statutory rights to obtain benefits under the Act." *Id.* at 732.

TSL contends that Section 322 represents a dramatic departure from the pre-amendment interpretation of the Act as set forth in *Neff.* To reiterate, TSL argues that Section 322 prohibits the payment of any additional benefits to a claimant who received workers' compensation pursuant to the law of another state. Further, it alleges that this provision is consistent with the general policy concerns underlying the 1993 amendments, which were to limit the cost of workers' compensation in Pennsylvania.

In the alternative, TSL argues that we should simply affirm the Board's decision that Section 322 of the Act merely prohibits Claimant from receiving any Pennsylvania benefits during any period that he has received West Virginia benefits. To reiterate, the Board, noting that Claimant received compensation benefits from West Virginia from August 16 to September 8, 1995, concluded that although he was precluded from receiving benefits in Pennsylvania for that time period, he was eligible to receive benefits in Pennsylvania after September 8, 1995. Thus, TSL contends in the alternative that we should rule that Claimant is not entitled to any Pennsylvania benefits during any period that he actually received benefits under the laws of West Virginia. TSL argues that, to rule

otherwise, would render Section 322 a nullity.

Claimant argues that Section 322 does not bar an injured claimant from asserting a claim for benefits in Pennsylvania, even if he has filed a claim in any other state. He contends that Section 322 merely prohibits the simultaneous receipt of benefits; it does not forever bar a Pennsylvania citizen from receiving the benefits and protections afforded under the Act.

Further, Claimant alleges that the 1993 amendments to Section 322 were designed to prevent double recovery for a single injury. He contends that the prohibition against concurrent receipt of benefits under the laws of Pennsylvania and another state should be interpreted to carry out the legislative intent, while promoting the humanitarian goals underlying the Act. *See Hoffman v. Workers' Compensation Appeal Board (Westmoreland Hosp.),* 559 Pa. 655, 741 A.2d 1286 (1999). Claimant notes that, once it became apparent that he was no longer receiving benefits from West Virginia and, thus, was entitled to receive Pennsylvania benefits, TSL paid him disability benefits from February 17 to March 11, 1997. He contends that adopting TSL's interpretation of Section 322 would add unnecessary and unauthorized restrictions to a claimant's right to benefits under the Act and would prevent equal application of the Act to all citizens of Pennsylvania.

■ We decline to hold that Section 322 precludes Claimant's claim petition in its entirety simply because he applied for and received workers' compensation benefits under the laws of West Virginia. That construction would be contrary to the plain language of Section 322 and the humanitarian goals of the Act.

---

**6.** We note that the Board rejected Claimant's argument that Sections 322 and 305.2(b) of the Act conflict in that Section 305.2(b) allows a claimant to receive compensation from Pennsylvania and from another state, with employer receiving a credit for the total benefits paid in the other state. The Board stated that Section 305.2(b) applies only to injuries occurring outside of Pennsylvania. Because Claimant did not pursue that argument on appeal, we decline to address it herein.

■ To reiterate, the applicable phrase of Section 322 provides that it shall be unlawful for any employee to receive compensation under the Act if he is at the *same* time receiving workers' compensation under the laws of any other state for the *same* injury. Clearly, the legislature in that portion of the Act was concerned with the *simultaneous* receipt of benefits for the same injury. In layman's terms, the legislature prohibited "double dipping." What the legislature did not prohibit was an employee receiving benefits under the Act for the same injury, *subsequent* to his receipt of benefits from another state for the same injury. If the legislature had chosen to insert such a provision, it certainly could have done so. *See Commonwealth of Pennsylvania v. Berryman,* 437 Pa.Super. 258, 649 A.2d 961 (1994).

## II

Also with regard to Section 322, TSL argues that the Board's decision that Claimant only received West Virginia benefits until September 8, 1995 is not supported by substantial evidence. TSL notes that it submitted additional exhibits that purportedly demonstrate that Claimant received West Virginia wage loss and medical benefits subsequent to September 8, 1995. (May 22, 1997 Hearing, TSL Exhibits Nos. 6 and 7.) We note that TSL Exhibit No. 6 is a printout from West Virginia's Workers' Compensation Division purporting to show benefits that have been paid on a year-to-date basis since the injury. Exhibit No. 7 is a printout from West Virginia's Workers' Compensation Fund Medical Cost Containment System purporting to show the payment of medical bills.

Further, TSL points out that Claimant in his brief acknowledges that he received West Virginia benefits after September 8, 1995.[7] Therefore, TSL requests that we clarify the Board's order to specifically state that Claimant is not entitled to receive any Pennsylvania benefits during any period of time that he has received benefits under West Virginia law.

■ We note that the WCJ found that "Claimant's West Virginia compensation through TSL was paid from August 16, through September 8, 1995, and then stopped for reasons he does not know." (WCJ's Finding of Fact No. 10.) Having reviewed TSL's Exhibits Nos. 6 and 7, however, we agree with TSL that it is not clear that Claimant stopped receiving workers' compensation benefits from West Virginia after September 8, 1995. Thus, we must remand this matter to the Board to remand to the WCJ for a determination as to when Claimant finally stopped receiving workers' compensation benefits under West Virginia law. If the WCJ is unable to make a determination from those two exhibits, we direct him to take evidence on that narrow issue. Once a date is determined, we direct that an order be issued providing that Claimant shall receive benefits in Pennsylvania subsequent to that date. We turn now to Claimant's issue, whether the Board erred in determining that Dr. Walczak's testimony regarding the cause of the diabetes insipidus was equivocal.

## III

■ The claimant in a claim petition proceeding bears the burden of establishing the right to compensation and all elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993). As the burdened party, the claimant has both the burdens of production and persuasion. *Crenshaw v. Workmen's Compensation Appeal Board (Hussey Copper),* 165 Pa.Cmwlth. 696, 645 A.2d 957 (1994). Where there is no obvi-

---

7. In argument portion of his brief, Claimant stated that "TSL once again paid Merchant disability benefits from February 17, 1997 through March 11, 1997." (Claimant's Brief at 12.)

ous causal connection between the injury and the work-related cause, a claimant must present unequivocal medical testimony to establish that connection. *Cromie v. Workmen's Compensation Appeal Board (Anchor Hocking Corp.)*, 144 Pa.Cmwlth. 37, 600 A.2d 677 (1991). Whether medical testimony is unequivocal is a question of law, subject to this Court's review. *Terek v. Workmen's Compensation Appeal Board (Somerset Welding & Steel, Inc.)*, 542 Pa. 453, 668 A.2d 131 (1995).

■ With regard to the definition of unequivocal medical evidence, we have held that

> [w]here medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship.

*Cardyn v. Workmen's Compensation Appeal Board (Heppenstall)*, 517 Pa. 98, 104, 534 A.2d 1389, 1391–92 (1987) (quoting *Lewis v. Commonwealth*, 508 Pa. 360, 365–66, 498 A.2d 800, 802 (1985)). In addition, in evaluating whether medical evidence is unequivocal, the doctor's testimony should be considered as a whole and the determination should not rest upon a few words taken out of context. *See Anzaldo v. Workmen's Compensation Appeal Board (M & M Restaurant Supply Co.)*, 667 A.2d 488 (Pa.Cmwlth.1995).

Claimant argues that the Board erred in finding Dr. Walczak's testimony equivocal where she opined that she believed that his diabetes insipidus was work-related. Claimant contends that Dr. Walczak's use of words such as "could well be" is not solely determinative as to whether her testimony is equivocal.

With regard to that causation, Dr. Walczak testified as follows:

> [Claimant's counsel] Q. Doctor, based on your evaluation and treatment of this patient over a period of approximately six months, did you formulate an opinion as to the cause of his diabetes insipidus?
>
> [Dr. Walczak] A. When he first got here, he was indeed still shaking from this episode of electric shock. And I did not quite understand that he had hit his head during the electric discharge. After I received a letter from the endocrinologist at Cleveland Clinic there, he describes that the patient actually had a fall and he hit his head got the electrocution. So it is well known that head injuries can cause diabetes insipidus.
>
> Q. Doctor, I'm telling you that—I'd like to tell you that in the record of this case from the Claimant's testimony and our knowledge of his past medical history, he did not have a previous diagnosis of diabetes insipidus. He did not have any previous head injuries of any significance prior to the electrical injury in August of 1995. Now, with that in mind, Doctor, do you have an opinion as to the cause of his diabetes insipidus?
>
> A. Then I would say it could well be the trauma that he received during that particular electrocution episode.
>
> Q. Would it be fair to say that it probably did cause his diabetes insipidus?
>
> A. Uh-huh (yes).

(May 17, 1996 Deposition of Dr. Walczak, N.T. 24–25; R.R. 113–114)

TSL argues that the Board correctly determined that Dr. Walczak's testimony as to the causation of Claimant's diabetes insipidus was equivocal. TSL contends that the above-quoted testimony is less than positive and insufficient as a matter of law to support benefits. Further, TSL alleges that, even when taken as a whole, Dr. Walczak's testimony demonstrates that the *most* that she was willing to say was that the diabetes insipidus "could be" or "probably" was related to the work inci-

dent. TSL contends that at no point in her entire testimony did she give a clear and definite opinion that the condition was causally related to the work injury. *See Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States)*, 96 Pa.Cmwlth. 613, 508 A.2d 624 (1986) (medical testimony is unequivocal and sufficient if the expert testifies that in her professional opinion she believes the fact exists.)

■ Having reviewed Dr. Walczak's testimony in its entirety, we must agree with the Board that it is equivocal as to causation. Although she stated that it is well known that head injuries can cause diabetes insipidus, she never really stated why she believed that this particular patient developed that condition as a result of his electrocution. In addition, even though an expert need not express her opinion in the precise terms used to articulate a legal standard,[8] Dr. Walczak's testimony was simply insufficient to unequivocally establish causation between the work injury and the diabetes insipidus.

## IV

Accordingly, we vacate that portion of the Board's order providing that Claimant receive total temporary disability benefits as of September 8, 1995 and remand to the Board to remand to the WCJ for a determination as to when the West Virginia payments ceased. To reiterate, if the WCJ is unable to determine from TSL's Exhibits Nos. 6 and 7 when the West Virginia payments ceased, then he is directed to take evidence on that narrow issue. Once a date is determined, we direct that an order be issued providing that Claimant shall receive temporary total disability benefits in Pennsylvania subsequent to that date. Further, we affirm that portion of the Board's order providing that Claimant failed to prove by unequivocal medical testimony that his diabetes insipidus was work-related.

8. *Sears, Roebuck and Co. v. Workmen's Compensation Appeal Board (Moore)*, 48 Pa.

## ORDER

AND NOW, this 1st day of September, 2000, that portion of the December 2, 1999 order of the Workers' Compensation Appeal Board providing that Claimant receive total temporary disability benefits as of September 8, 1995 is hereby vacated and this matter is remanded for a determination and, if necessary, an evidentiary hearing limited to the issue of determining the date West Virginia workers' compensation payments ceased. Further, that portion of the Board's order providing that Claimant failed to prove by unequivocal medical testimony that his diabetes insipidus was work-related, is affirmed.

Jurisdiction relinquished.

McGINLEY, Judge, concurring and dissenting.

I concur in part and respectfully dissent in part to the majority's opinion. I concur that we should remand to the Board to remand to the WCJ for a determination as to when the West Virginia payments ceased. However, I dissent from the majority's affirmance of the portion of the Board's order providing that Claimant failed to prove by unequivocal medical testimony that his diabetes insipidus was work-related.

The WCJ credited Dr. Walczak's testimony and found that Claimant's diabetes insipidus resulted from Claimant's electrocution at work. The Board and the majority found that Dr. Walczak's testimony was equivocal because she stated "it is well known that head injuries can cause diabetes insipidus" and that the trauma Claimant received during the electrocution "could well be" the cause of the diabetes insipidus and that the trauma "probably" caused Claimant's condition.

Cmwlth. 161, 409 A.2d 486 (1979).

Where there is no obvious causal connection between an injury and the alleged cause, the claimant must establish that connection with unequivocal medical testimony. The question of whether medical testimony is equivocal is a question of law and reviewable by this Court. In conducting a review of the medical testimony, the medical witness' entire testimony must be taken as a whole and a final decision should not rest on a few words taken out of the entire testimony's context. *Lewis v. Commonwealth of Pennsylvania*, 508 Pa. 360, 498 A.2d 800 (1985).

In *G & B Packing v. Workmen's Compensation Appeal Board (Lindsay)*, 653 A.2d 1353 (Pa.Cmwlth.1995), *vacated on other grounds sub nom, JFC Temps, Inc. v. Workmen's Compensation Appeal Board (Lindsay)*, 545 Pa. 149, 680 A.2d 862 (1996), the claimant's medical witness, Dr. Michael Sams (Sams), testified regarding the cause of the claimant's injury. Although Dr. Sams opined, "A causal relationship, I think, exists," "I believe a causal relationship exists in this case," and "there is a good probability", the WCJ found this testimony to be unequivocal.

The Board affirmed. *G & B*, 653 A.2d at 1356. This Court also found that the testimony in its entirety was unequivocal. *G & B*, 653 A.2d at 1358.

Here, as in *G & B*, Dr. Walczak testified using less than completely positive words to describe the relationship between Claimant's electrocution and his diabetes insipidus. Taken as a whole, I believe that Dr. Walczak unequivocally testified that the work incident caused the diabetes. Particularly here, because the doctor opined that "... it is well known that head injuries can cause diabetes insipidus." And Claimant did not have a previous diagnosis of diabetes insipidus or any head injuries prior to the injury in August, 1995. Given that the WCJ found Dr. Walczak credible, I believe that substantial evidence supports the WCJ's decision and would reverse the Board on this issue.