# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brand Energy Services, LLC, : 
Indemnity Insurance Company : 
of North America and Broadspire, : 
               Petitioners : 
                : 
        v. :   No.  2015 C.D. 2016
                :   ARGUED:  October 19, 2017
Workers' Compensation Appeal : 
Board (Arnao), : 
               Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**          **FILED:  November 14, 2017**

Brand Energy Services, LLC (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed as modified the decision of a Workers' Compensation Judge (WCJ) granting the claim petition of Paul Arnao (Claimant).  The Board agreed that Claimant sustained his burden of proving that he suffered a work-related aggravation of bilateral carpal tunnel syndrome, bilateral thumb CMC (carpometacarpal) and STT (scapho-trapezio-trapezoidal) osteoarthritis, and left SLAC (scapholunate advanced collapse) wrist (collectively, "work-related aggravation of underlying conditions"), but modified the WCJ's decision to exclude "probable right SLAC wrist" from the description of the work injury.  We affirm.

The facts as found by the WCJ are as follows. A union carpenter, Claimant began working for Employer in June 2012. Each day, Employer assigned Claimant and his crew to a specific location to build, modify and dismantle scaffolding. WCJ's November 24, 2015, Decision, Finding of Fact (F.F.) Nos. 2 and 10. Employer would receive a certain dollar figure for every foot of scaffolding that they erected or dismantled. *Id.*, No. 10. In January 2014, Employer transferred three employees, including Claimant, to night shift when there was a major hiccup at the plant and it was attempting to "get it back on line." *Id.*, No. 11. After the transfer, Claimant's hands started to hurt. *Id.*, No. 3.

From January to March 2014, Claimant worked ten to twelve hours a night for thirteen days on, with only one day off. *Id.* There was an increased pace and pressure to complete certain scaffolding during this period. *Id.*, Nos. 3 and 22. In addition, Claimant believed that there was a quota of 300 leg feet of scaffolding that Employer expected to have erected during an eight-hour shift. At night, he was building between 1000 and 1200 leg feet of scaffolding and his hands became more swollen. *Id.*, No. 3. Claimant advised his night-shift supervisor, Mr. Hillsgrove, that he was having problems with his hands, that they hurt, and that he thought it was from the scaffolding. *Id.*

In March 2014, the night shift ended and Claimant returned to day shift during which his hands continued to be numb, swollen, and tingly. *Id.* Nonetheless, he occasionally worked additional hours on day shift. *Id.* Also in March 2014, Claimant first sought treatment for his hands when he saw a physician's assistant at his family doctor's office. *Id.*, No. 5.

In May 2014, Claimant submitted a note from his family practice to his day-shift supervisor, Mr. Manley, outlining the problems that he was experiencing

2

with his hands. Two hours later, Employer laid off Claimant. *Id*., No. 6. Subsequently, Claimant filed a claim petition alleging that he sustained an injury while moving scaffolding and describing it as follows: "Including but not limited to bilateral upper extremity injuries." July 10, 2014, Claim Petition; Reproduced Record (R.R.) at 2a.

In support of his claim petition, Claimant presented the deposition testimony of Dr. Randall Culp, a board-certified hand surgeon who first examined him in May 2014 when he presented with complaints of bilateral hand pain and numbness. Ultimately, Dr. Culp diagnosed him with the aforementioned work-related aggravation of underlying conditions and "probable right SLAC wrist." Concluding that these diagnoses were consistent with Claimant's work duties, Dr. Culp opined that they occurred over time, that some were arthritic and degenerative in nature, and that the work did not produce them. F.F. Nos. 8 and 9. Nonetheless, Dr. Culp opined that Claimant's job duties brought the conditions to a head, aggravated them, and made them more painful. He also opined that Claimant was unable to return to his pre-injury job. *Id*., No. 9.

In July 2014, Dr. Culp performed surgery in the nature of a left proximal row carpectomy (removing three bones from the wrist), a left trapeziectomy (removing the fourth bone from the base of the thumb), and a left carpal tunnel release. *Id*., No. 8 *and* April 20, 2015, Deposition (Dep.) of Dr. Culp, Notes of Testimony (N.T.) at 11-12; R.R. at 16-17a. Claimant continues to undergo physical therapy for his left hand, remains unable to position it in certain ways, and has no real gripping power with his thumb. F.F. Nos. 5 and 6. Consequently, although surgery has been recommended for his right hand, Claimant has not yet scheduled it. *Id*., No. 5.

3

Primarily relying upon the credible testimony of Claimant and Dr. Culp, the WCJ determined that Claimant's work-related aggravation of underlying conditions, including "probable right SLAC wrist," was caused by the increased hours and work that he performed on the night shift from January through March 2014. *Id.*, Nos. 20 and 24. In addition, she concluded that Claimant could not return to his pre-injury job and that he gave Employer notice of his work injuries on May 8, 2014. *Id.*, No. 20. Accordingly, she ordered Employer to pay him total disability benefits at a weekly rate of $932 from May 9, 2014, and ongoing.[1] *Id.*, No. 25.

On appeal, the Board affirmed the WCJ's decision, but modified it to the extent of removing the "probable right SLAC wrist" from the work-related aggravation of underlying conditions based on its determination that Dr. Culp's testimony on that condition was equivocal and, therefore, could not support his opinion that it was work-related. Employer's petition for review followed. Before us for consideration are two issues: (1) whether Dr. Culp's testimony was equivocal as to the causal connection between Claimant's work and the work-related aggravation of underlying conditions; and (2) whether Dr. Culp had a sufficient understanding of Claimant's work and, consequently, a proper factual foundation for a medical opinion such that his opinion was competent.

### Equivocality of Dr. Culp's Testimony as to Causation

A claimant bears the burden of establishing his right to compensation and all of the elements necessary to support an award of benefits, including the burden to prove a causal relationship between a work-related incident and the alleged

---

[1] "The Parties agreed to a Statement of Wages indicating that Claimant had an average weekly wage of $1,763.14 per week with an applicable compensation rate of $932.00." F.F. No. 7. In addition, the WCJ found that Claimant received unemployment compensation benefits in the weekly amount of $563 for twenty-six weeks. *Id.*, No. 21.

4

disability. *Rife v. Workers' Comp. Appeal Bd. (Whitetail Ski Co.)*, 812 A.2d 750 (Pa. Cmwlth. 2002). "To establish a work-related aggravation of a pre-existing condition, a claimant must show a causal connection between work and the aggravation." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.)*, 893 A.2d 191, 195 n.5 (Pa. Cmwlth. 2006). This is established by showing that "the aggravation arose in the course of employment and was related thereto." *Id*. Where the causal connection is not obvious, a claimant must present unequivocal medical testimony to establish that connection. *Rife*, 812 A.2d at 754. The determination of whether medical testimony is unequivocal is a question of law, subject to this Court's review. *Merchant v. Workers' Comp. Appeal Bd. (TSL, Ltd.)*, 758 A.2d 762 (Pa. Cmwlth. 2000).

Regarding the necessity of unequivocal medical testimony, it is well established that:

> [w]here medical testimony is necessary to establish a causal connection, the medical witness must testify, not that the injury or condition might have or possibly came from the assigned cause, but that in his professional opinion the result in question did come from the assigned cause. Medical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence for the purpose of establishing the causal relationship.

*Id*. at 770. Moreover, "in evaluating whether medical evidence is unequivocal, a doctor's testimony should be considered as a whole and the determination should not rest upon a few words taken out of context." *Id*.

Here, Employer contends that Dr. Culp's use of the words "probable" and "possible" in describing Claimant's diagnoses *and* the causal relationship to his work rendered his entire opinion equivocal. To that end, it maintains that the Board did not go far enough in simply removing "possible right ulnar impaction syndrome"

5

from the work-related aggravation of underlying conditions and should have reversed the WCJ's decision in its entirety. Employer's argument is somewhat misleading, but essentially without merit.

As an initial matter, the Board did not remove "possible right ulnar impaction syndrome" from the description of the work injury; it removed "probable right SLAC wrist." November 15, 2016, Decision of the Board at 9. As it observed, "possible right ulnar impaction syndrome" was part of Dr. Culp's June 2014 diagnosis. *Id*. at 6 *and* Dep. of Dr. Culp, N.T. at 11; R.R. at 16a. This condition, however, did not make it into the diagnosis that the WCJ referenced in Finding of Fact No. 24, which mirrors Dr. Culp's summary of his ultimate diagnosis. Dep. of Dr. Culp, N.T. at 19; R.R. at 24a. To the extent, however, that Employer maintains that Dr. Culp's testimony as to causation is equivocal as to all of the conditions, as asserted in its petition for review and brief, Employer's misstatement does not make a difference.

In addition, the alleged equivocal language pertained to diagnoses, not to causation. As Dr. Culp testified:

> Diagnoses are bilateral carpal tunnel syndrome, number one, bilateral thumb CMC and STT osteoarthritis, for sure, left SLAC wrist, and the last one would be *probable right SLAC wrist*. I have found that the only way you can truly tell despite all the MRIs that we have is to look with an arthroscope to know.

*Id*. Accordingly, with the clarification that the alleged words of equivocality pertain to the diagnosis and not to causation, we turn to causation.

Employer maintains that the fact that Dr. Culp's initial working diagnosis evolved and changed based on additional examinations and testing renders his opinion equivocal. This argument is without merit. While unequivocal evidence

6

is necessary to establish causation in this appeal, a factor such as an evolving diagnosis primarily goes to the weight of the doctor's evidence. Mindful that determinations of credibility and evidentiary weight are within the WCJ's exclusive province,[2] we note that the WCJ in accepting Dr. Culp's testimony as credible and persuasive relied, in part, on his status as Claimant's treating physician. In that regard, she found that Dr. Culp was "far more familiar with Claimant's condition, progress and surgery and prognosis after surgery than [Employer's medical witness] who only saw Claimant on one occasion." F.F. No. 23.

Moreover, in rejecting the testimony of Employer's medical witness, the WCJ observed that he lacked a competent foundation to opine that Claimant's preexisting conditions were not aggravated because he failed to ask Claimant about the increase in workload from January 2014 to March 2014. *Id.* By way of contrast, Dr. Culp acknowledged that Claimant was scaffolding over a ten-hour period during that extended period and that circumstances were such that he had to work at an accelerated pace. Dep. of Dr. Culp, N.T. at 21-23; R.R. at 26-28a. In addition, when asked if Claimant's symptoms would have persisted or worsened when he worked the day shift with reduced requirements from April to May 2014, Dr. Culp responded probably not because "the straw that broke the camel's back had already taken place by that point." *Id.* at 38; R.R. at 43a.

Employer also argues that Dr. Culp's characterization of some of the conditions as degenerative and arthritic renders his opinion equivocal as to all of the conditions. This contention is also without merit. Section 301(c)(1) of the Workers' Compensation Act[3] defines a compensable work injury as "an injury to an employee,

---

[2] *Ward v. Workers' Comp. Appeal Bd. (City of Phila.)*, 966 A.2d 1159, 1164 (Pa. Cmwlth. 2009).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 441(1).

7

regardless of his previous physical condition, arising in the course of his employment and related thereto" and includes aggravation. *See also Mancini's Bakery v. Workmen's Comp. Appeal Bd. (Leone)*, 625 A.2d 1308, 1311 (Pa. Cmwlth. 1993) (recognizing that existence of preexisting condition does not preclude receipt of workers' compensation benefits when condition is aggravated by demands of job). Accordingly, the fact that some of Claimant's preexisting conditions are arthritic and degenerative is of no moment as long as he can prove a causal connection between his work and the resulting aggravation.

Regarding causation, Dr. Culp testified as follows as to the underlying conditions that were aggravated by Claimant's work duties:

> [I]t was during this time period [January to March 2014] that he was telling me that his hands were painful, swollen, numb and tingly which were consistent I felt with the diagnoses that I have discussed earlier and listed. And so I felt that based on my review of what I had that this work did not produce a SLAC wrist, did not produce thumb arthritis, and it did not produce STT osteoarthritis, it did not necessarily produce carpal tunnel syndrome but it certainly aggravated it based on the records that I had and I therefore felt that was aggravated by work.

Dep. of Dr. Culp, N.T. at 14; R.R. at 19a. In addition, Dr. Culp on redirect opined that Claimant's underlying degenerative changes were aggravated by working for Employer and testified as follows:

> [I]f you think that something is aggravated you need to show that the work activities significantly accelerated or aggravated the pre-existing condition. I felt that that's what happened here. Seemed to me that over a several year period he went from having no complaints to a lot of complaints so to me that was relatively straightforward, that part of it.

8

*Id.* at 36; R.R. at 41a. Accordingly, there was unequivocal evidence to support Dr. Culp's opinion as to causation for all of the diagnoses except "probable right SLAC wrist."

**Proper Foundation for & Legal Competency of Dr. Culp's Testimony**

It is well established that a proffered medical opinion can be rendered incompetent if the medical professional does not have a complete grasp of the work incident. *Long v. Workers' Comp. Appeal Bd. (Integrated Health Serv., Inc.)*, 852 A.2d 424, 428 (Pa. Cmwlth. 2004). This includes situations where a doctor demonstrates a lack of knowledge as to a claimant's job tasks. A medical expert's testimony is not rendered incompetent, however, unless it is solely based on inaccurate or false information. *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008).

Here, Employer maintains that Dr. Culp's testimony is incompetent because he did not have a precise understanding of Claimant's work. As the WCJ found, however, Dr. Culp reviewed Claimant's job duties with him. F.F. No. 9. In that regard, Dr. Culp testified that, after speaking with Claimant, his understanding was as follows: "Well, basically the majority of his work was building scaffolding which is what I was looking at in more detail. And building quite a few scaffolds [was] my understanding, long hour days, using hand and power tools to build these scaffolds. . . ." Dep. of Dr. Culp, N.T. at 13-14; R.R. at 18-19a. In addition, although Dr. Culp acknowledged that he did not review a job description for the union carpenter position, he based his opinion on the fact that Claimant was building at least 300 leg foot of scaffolding per shift and that he was scaffolding over a ten-hour period during which "he had to go faster because something was closed, a plant was closed or they had to speed up." *Id.* at 21-23; R.R. at 26-28a. Finally, Dr. Culp

9

testified that he reviewed Claimant's testimony before his deposition and that his opinion was based on the history given to him by Claimant. *Id*. at 17-21; R.R. at 22-26a. Accordingly, we conclude that there is a proper foundation for Dr. Culp's opinion and that, therefore, his testimony is competent.

For the above reasons, therefore, we affirm.

                                                  _____

**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brand Energy Services, LLC,       :
Indemnity Insurance Company       :
of North America and Broadspire,       :
           Petitioners       :
      :
        v.       :       No. 2015 C.D. 2016
      :
Workers' Compensation Appeal       :
Board (Arnao),       :
           Respondent       :

## **O R D E R**

AND NOW, this 14th day of November, 2017, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

 

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge